**STATE of Utah, Plaintiff and Appellee,**

v.

**Rex Paul TAYLOR, Defendant and Appellant.**

**No. 900501–CA.**

Court of Appeals of Utah.

Sept. 12, 1991.

Michael D. Esplin and Gary H. Weight (argued), Aldrich, Nelson, Weight & Esplin, Provo, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Christine F. Soltis, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Defendant Rex P. Taylor appeals his conviction by a jury for possession of a controlled substance with the intent to distribute, a third degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (1990), and possession of marijuana without a tax stamp affixed, a third degree felony, in violation of Utah Code Ann. § 59–19–106(2) (Supp.1990). We affirm.

## FACTS

In 1988, Gil Marchbanks purchased mountain property in the Timberlakes area

of Wasatch County. Defendant was the contractor for a multilevel cabin erected on the property in the fall of 1988. The cabin was isolated and did not have year-round access. Despite the cabin's isolation, two of the area's year-round residents, the Oteros, were familiar with defendant and Gil Marchbanks and believed the two were friends in addition to their business dealings. In late March or early April 1989, defendant telephoned the Oteros to inquire as to the passability of the road, indicating he wanted to retrieve his "jet ski."

On April 29, 1989, Provo police conducted a surveillance of defendant, observing defendant as he drove to various locations and met briefly with individuals. Throughout the surveillance, defendant drove a small truck with an attached trailer carrying a jet ski which matched the description of the one he had stored at the cabin. Ultimately, defendant was arrested in Utah County for distribution of marijuana. At the time of his Utah County arrest, defendant had fourteen pounds of marijuana packaged in one pound amounts in two-gallon sized Ziploc brand bags. Defendant also had in his possession additional two-gallon Ziploc bags, a ledger notebook containing entries consistent with distribution of marijuana in pound amounts including one pound sales to "Gil," and about $25,000 in small bills.

Following his arrest, defendant pled guilty to distribution and the State dismissed charges of possession with the intent to distribute and possession without a tax stamp. Thereafter, defendant apparently went to Las Vegas, where he resided with his girlfriend Vickie Tooke, and returned to Utah during the first week of May.

In May 1989, the Provo City Police Department obtained a search warrant for the Timberlakes cabin after receiving information that marijuana was located at the cabin. The officers conducted a search of the cabin on May 11, 1989. Upon searching the basement, the officers located two large gun safes. In one safe, the officers found thirty-six pounds of marijuana, in two large bales in trash compactor bags

with the remainder packaged in one pound amounts in two-gallon sized Ziploc brand bags. The other safe contained only marijuana residue.

In their search of the premises, the officers also found one opened and thirteen unopened boxes of two-gallon sized Ziploc brand bags, identical to those found in the safe and those seized in defendant's prior Utah County arrest, a triple beam scale, and small amounts of marijuana throughout the cabin. In addition, the officers found numerous documents in the cabin including various receipts made out to defendant for the purchase of furniture, propane gas for the cabin, and construction materials. Officers also found defendant's 1988 hunting license and 1989 registration materials for two 1988 Yamaha snowmobiles issued to defendant and matching the snowmobiles found in the basement of the cabin.

Defendant was arrested and charged with possession with intent to distribute and possession of marijuana without a tax stamp affixed in connection with the marijuana discovered at the Timberlakes cabin. Prior to trial, defendant moved to suppress the evidence found at the cabin. The court denied the motion determining defendant had no expectation of privacy in the contents of the cabin and therefore no standing to object to the search. Defendant also made a pretrial motion in limine to exclude evidence of the facts surrounding his previous arrest and conviction for distribution of marijuana in Utah County in April 1989. The court denied defendant's motion.

At trial, the State introduced substantial evidence regarding defendant's prior Utah County conviction over the objection of defendant. Further, the State called as a witness Vickie Tooke, defendant's live-in girlfriend, and subsequently introduced for impeachment purposes, over defendant's objection, a transcript of a previously taped statement of Vickie Tooke including a statement that defendant told her on the day of his Utah County arrest he had picked up the thirty-six pounds of marijuana from an individual in the Park City area.

At the conclusion of the State's case, defendant moved for a dismissal based on insufficient evidence, but the trial court denied the motion.

Defendant in this appeal claims the trial court erred in (1) denying defendant's motion to suppress evidence; (2) admitting evidence of prior crimes or bad acts of defendant; (3) admitting Vickie Tooke's prior written statements where the statements contained irrelevant prejudicial matters; and (4) denying defendant's motion to dismiss.

## I. MOTION TO SUPPRESS EVIDENCE

Defendant argues the trial court improperly denied his motion to suppress evidence gathered as a result of the execution of a search warrant on the Timberlakes cabin as there was not probable cause to support the issuance of the search warrant. The State responds that, as a threshold matter, defendant cannot challenge the propriety of the search because he had no expectation of privacy in the cabin.[1]

### A. *Standard of Review*

█ The trial court concluded defendant had no reasonable expectation of privacy in the Timberlakes cabin under the facts presented. Generally, we review a trial court's factual findings regarding a motion to suppress evidence under a "clearly erroneous" standard. *State v. Cayer*, 814 P.2d 604, 610 (Utah App.1991). However, we review the ultimate conclusions drawn from those findings as a matter of law, under a correction of error standard, affording no deference to the trial court. *Id.; see also State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991) (trial court's decision to admit evidence reviewed for correctness but underlying factual and credibility determinations upheld unless clearly erroneous).

█ Although this court in *Cayer* set out the bifurcated standard of review in a case involving an expectation of privacy,

we did not specify exactly how the standard was to be applied. In *State v. Rowe*, 806 P.2d 730, 735 (Utah App.), *cert. granted*, 817 P.2d 327 (Utah 1991), this court recognized that a "subjective expectation of privacy is legitimate if it is 'one that society is prepared to recognize as reasonable.'" *Id.* (quoting *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990)). Thus, a trial court's determination as to whether a defendant has an expectation of privacy is a two-step process, as is the review by this court. The first step involves a determination of whether the individual has demonstrated "a subjective expectation of privacy in the object of the challenged search." We review the pertinent findings under a clearly erroneous standard. *See United States v. Hastamorir*, 881 F.2d 1551, 1560 (11th Cir. 1989); *United States v. McBean*, 861 F.2d 1570, 1573 (11th Cir.1988). The second step is a conclusion of law as to whether society is "willing to recognize the individual's expectation of privacy as legitimate." *See id.* The second inquiry is reviewed under a correction of error standard and is only necessary where the first inquiry is satisfied. *See id.*

### B. *Expectation of Privacy*

█ Generally, fourth amendment rights are personal in nature and a defendant must establish an expectation of privacy in the area or item searched in order to challenge the constitutional propriety of the search. *See State v. Constantino*, 732 P.2d 125, 126–27 (Utah 1987); *Cayer*, 814 P.2d at 609–11 (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 427–34, 58 L.Ed.2d 387 (1978)); *State v. Grueber*, 776 P.2d 70, 73–74 (Utah App.), *cert. denied*, 783 P.2d 53 (Utah 1989). In order to be sufficient for fourth amendment purposes, a subjective expectation of privacy must be "one society is prepared to recognize as reasonable." *Olson*, 110 S.Ct. at 1687 (quoting *Rakas*, 99 S.Ct. at 430–31 n. 12); *Rowe*, 806 P.2d at 735.

---

**1.** We note that consistent with our directive in *State v. Marshall*, 791 P.2d 880 (Utah App.), *cert. denied*, 800 P.2d 1105 (Utah 1990), the State

properly raised the issue of defendant's lack of standing in the motion to suppress hearing before the trial court.

■ The determination of whether an individual has a legitimate expectation of privacy in an item or an area is a fact sensitive inquiry. *Grueber*, 776 P.2d at 74. In *Rakas*, the Supreme Court noted that one who "owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy." *Rakas*, 99 S.Ct. at 430 n. 12. We note that a legitimate expectation of privacy may arise where a defendant either owns or controls certain property regardless of whether or not he or she is actually present at the time of the search. *See generally Cayer*, 814 P.2d at 609–11.

■ An expectation of privacy also arises where defendant is personally present at or in possession of property with the authority or permission of the owner. Courts have recognized a legitimate expectation of privacy where a defendant resided at the searched premises as a co-tenant. *See, e.g., Cayer*, 814 P.2d at 609–11 (defendant had privacy expectation in trailer from which incriminating evidence was seized as defendant lived in the trailer with three other defendants). Some courts have also recognized a legitimate expectation of privacy where there is evidence that a defendant routinely used an automobile or lodging with the permission of the owner and had been given a key or some regular means of access. *See, e.g., United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (defendant had reasonable expectation of privacy in his aunt's hotel room where he had been given a key to the room, had the occupant's permission to use the room at will, and often entered the room for a variety of reasons); *In re JRM*, 487 S.W.2d 502 (Mo.1972) (juvenile had standing to challenge warrantless search of car even though he was not record owner and not on premises at time of search where evidence showed he had own key, right to use car, and regularly drove to school, etc.).

However, a subjective expectation of privacy has been found unreasonable where the defendant could not demonstrate a right to use the automobile or the lodging. *See, e.g., Constantino*, 732 P.2d at 127

("Absent claimed right to possession, [defendant] could not assert any expectation of privacy in the items seized and had no standing to object to the search."); *State v. Iacono*, 725 P.2d 1375, 1377–78 (Utah 1986) (defendant did not have standing to challenge search of mother's trailer home as there was no evidence "that he shared ownership, use, or possession of the trailer"); *Grueber*, 776 P.2d at 75 (no standing to challenge search where no evidence in the record to establish defendant had owner's permission to use vehicle at will, or had a key to vehicle, or had a proprietary or possessory interest in van).

Recently, the United States Supreme Court focused on the presence of the individual and determined a defendant had a reasonable expectation of privacy, and thus standing to challenge his warrantless arrest, when he was an overnight guest in someone else's home at the time of the arrest. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In *Olson*, the Court focused on the vulnerability and personal privacy of an individual while a guest at another's home and concluded an expectation of privacy was legitimate as it was "rooted in 'understandings that are recognized and permitted by society.'" *Id.* at 1689–90. Subsequently, this court extended the *Olson* doctrine under unusual facts to a social guest, although it was not clear from the record she intended to spend the night. *Rowe*, 806 P.2d 730. In *Rowe*, the court focused on the personal privacy notions of an individual while visiting another at the other's home. The court noted that there is "no talismanic significance, in determining standing, to the length of time a social guest is in the home." *Id.* at 735.

Turning to the instant case, the trial court ruled:

(1) Defendant by affidavit submitted . . . stated he is not the record owner of the real property, that the record title to the real property is in the name of Gil Marchbank, and defendant's only interest in the real property was that of a builder, in that he performed labor and provided building materials for the cabin, that as a

result of the work and furnishing building materials, the defendant has use of the cabin from time to time. (2) Maxine Carlile, Wasatch County Deputy Assessor, testifies that Gil Marchbank was the titled owner of said real property in 1989 and had purchased the same under Special Warranty Deed dated July 28, 1988.... (3) That the alleged interest of the defendant is not sufficient to give him an expectation of privacy in the cabin titled in the name of Gil Marchbank. Defendant, according to his own sworn affidavit, has neither a property nor a possessory interest in the cabin to come within the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Constitution of the State of Utah. (*See Rakas v. Illinois*, 439 U.S. 128 [99 S.Ct. 421, 58 L.Ed.2d 387] (1978); *State v. DeAlo*, 748 P.2d 194 (Utah [App.] 1987)).

 Defendant does not specifically challenge the trial court's findings that he is not the owner of the property and that his only subjective privacy interest was as an occasional guest. Defendant offered no evidence that he routinely used the cabin or that he had a key to the cabin and permission to use it on a regular basis. The record does, however, establish that defendant left his personal property stored at the cabin. Defendant was not present at the cabin at the time the warrant was executed. Given the facts in the record and the trial court's findings, we believe the trial court properly determined defendant demonstrated no subjective privacy expectations.[2]

 Even if defendant had claimed some subjective privacy interest, we would determine such an expectation unreasonable. To conclude otherwise would permit an occasional visitor, not the owner or co-tenant of a summer cabin or condominium, to enjoy an expectation of privacy in the contents of the structure even when he was not present at the time of or recently prior to the search. Accordingly, we uphold the trial court's determination that defendant lacked standing to challenge the search of the Timberlakes cabin.[3]

**2.** At trial, defendant opted, as a matter of strategy, to distance himself from the Timberlakes cabin and any sort of interest therein in order to defeat the charge that he constructively possessed the marijuana found there. Having made this choice, he offered no evidence to establish that he had an expectation of privacy in the cabin.

**3.** Because we uphold the trial court's determination that defendant lacked standing to challenge the search, we need not reach the issue of whether there was probable cause to support the search warrant. Nevertheless, we note that if we were to reach the issue, we would likely find probable cause. In reviewing a probable cause determination, a magistrate's decision will be upheld if "the magistrate had a substantial basis for ... [determining] that probable cause existed." *State v. Babbell*, 770 P.2d 987, 991 (Utah 1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). The determination of whether a search warrant meets the probable cause standard has been held to require examination of the "totality of the circumstances," and includes consideration of such factors as "veracity, reliability, and basis of knowledge of confidential informants, and whether the judicial officer issuing the warrant reached a practical, common sense decision.... The weight accorded these factors may vary according to the circumstances." *State v. Ayala*, 762 P.2d 1107, 1109–10 (Utah App.1988); *see also State v.*

*Hansen*, 732 P.2d 127 (Utah 1987); *State v. Bailey*, 675 P.2d 1203 (Utah 1984).
Contrary to defendant's assertions, the affidavit in this case is sufficient. Taken as a whole, the affidavit establishes that defendant had been arrested on April 29 in Utah County with fourteen pounds of marijuana and $25,000 in cash in small bills. On the same day, defendant's home in Provo, Utah was searched and evidence of marijuana and distribution equipment were found. Vickie Tooke told police defendant was spending more money than he legitimately earned. Another individual arrested the same day told police defendant had given him marijuana. One week after defendant's arrest, police received an unsigned letter stating defendant had a cabin in the Heber, Utah area. Two days later, a relative of defendant's called police and told them defendant had requested the relative to go to the Heber area cabin and retrieve a large amount of cash accumulated from distribution of drugs. The relative told police the cabin was not in defendant's name. The information was consistent with documents found in search of defendant's home on April 29 which indicated defendant had paid some taxes on a cabin in the Timberlakes area east of Heber. A title search revealed that Gil Marchbanks, a known associate of defendant's, owned the cabin. Based on the totality of circumstances, the conclusion seems inescapable that there was probable cause to support the search of the cabin.

## II. ADMISSION OF PRIOR CRIMES OR BAD ACTS

█ Defendant contends that evidence regarding his April 29, 1989 Utah County arrest and conviction was improperly admitted in violation of Utah Rules of Evidence 404(b) and 403.[4]

### A. *Standard of Review*

Defendant contends the trial court improperly allowed the State to introduce evidence concerning defendant's prior Utah County arrest and conviction for possession of marijuana including a ledger showing one pound sales to "Gil," $25,000 in cash, and testimony that the defendant had fourteen pounds of marijuana packaged in one pound amounts in two-gallon Ziploc brand bags. Defendant argues this evidence was irrelevant and prejudicial. Defendant claims the only purpose of the evidence was to "persuade the jury that the defendant was a drug dealer of long duration and therefore must have been the person who possessed the marijuana in the Timberlakes cabin in Wasatch County."

The State counters that the evidence of defendant's possession of marijuana, similarly packaged, twelve days prior to the offense was probative of an element of the crime—that defendant had constructive possession of the marijuana found at the cabin. The State claims the evidence establishes defendant's knowledge, plan, preparation and identity as the constructive possessor of the marijuana in the cabin.

█ In *State v. Ramirez*, 817 P.2d 774 (Utah 1991), the Utah Supreme Court clarified the standard of review properly applied to admission of evidence. Because the question is one of law, it is reviewed for correctness. *Id.* at 781 n. 3. However, the trial court's subsidiary factual determinations should be given deference by the appellate court and only be overruled when they are clearly erroneous. *Id.* In balancing the "probativeness of a piece of evidence against its potential for unfair prejudice," appellate courts should "de facto grant [the trial court] some discretion, because [the appellate court will] reverse only if ... [the trial court] acted unreasonably in striking the balance." *Id.* Even when evidence is found to be improperly admitted, reversal is only required where admission of the evidence amounted to prejudicial error. *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989); *State v. Larson*, 775 P.2d 415, 419 (Utah 1989); *State v. Gentry*, 747 P.2d 1032, 1035 (Utah 1987).

### B. *Rule 404(b)*

Rule 404(b) of the Utah Rules of Evidence, provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b) of the Federal Rules of Evidence follows the prior federal approach and acts as a so-called "inclusionary" rule, thus admitting all evidence of other crimes relevant to an issue at trial except that evidence that proves only criminal disposition. *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* § 404[08] (1990).

The Utah Supreme Court, in construing Rule 404(b) of the Utah Rules of Evidence has agreed with the federal approach stating: "Rule 404(b) does not exclude evidence unless it fits an exception; rather, it allows admission of relevant evidence 'other than to show merely the general disposition of the defendant.' " *State v. Jamison*, 767 P.2d 134, 137 (Utah App.1989) (quoting

---

4. Defendant also challenges the admission of the evidence under Utah Rule of Evidence 609(a). A challenge under Rule 609(a) is improper in this case in light of *State v. Gentry*, 747 P.2d 1032, 1036 (Utah 1987), wherein our supreme court expressly stated that to "preserve for appellate review a claim of improper impeachment with a prior conviction, *a defendant* *must testify.* This rule will apply prospectively in all cases tried after the date of this opinion." (Emphasis added.) In the instant case, tried after *Gentry* was issued, defendant elected not to testify and thus cannot now raise a Rule 609(a) claim of error. We therefore concentrate on defendant's claims under Rules 404(b) and 403.

*State v. Tanner,* 675 P.2d 539, 546 (Utah 1983)).

"Evidence is not admitted merely because it shows a common plan, scheme, or manner of operation. Instead, evidence of a common plan, scheme or manner of operation is admitted where it tends to prove some fact material to the crime charged." [5] *Id.* (quoting *State v. Forsyth,* 641 P.2d 1172, 1176–77 (Utah 1982)). In sum, "[w]hen evidence may establish constitutive elements of the crime of which the defendant is accused, in the case on trial, it is admissible even though it tends to prove that the defendant has committed other crimes." *Id.; see also State v. Cox,* 787 P.2d 4 (Utah App.1990).

Utah appellate courts have affirmed the admission of evidence of other crimes, wrongs or acts pursuant to Rule 404(b) in numerous situations. In *Jamison,* 767 P.2d 134, the court upheld the admission of evidence of defendant's repeated prior use of a car wash change machine where defendant was charged with stealing from the same change machine by "milking" using a dollar bill and lotion. The court concluded that the evidence tended to show opportunity and knowledge and was thus admissible. *Id.* at 137. In *State v. Johnson,* 748 P.2d 1069 (Utah 1987), the supreme court determined the trial court properly admitted evidence of defendant's prior forgery convictions as the evidence was relevant to and probative of the issue of identity in a later forgery prosecution. *Id.* at 1075. In *State v. Rocco,* 795 P.2d 1116 (Utah 1990), a prosecution for murder by arson, the court held that evidence regarding a similar arson that same night was proper to prove a material fact such as absence of mistake, motive, opportunity, intent, preparation, plan, knowledge or identity. *Id.* at 1119. In *State v. Gotschall,* 782 P.2d 459 (Utah 1989), the court concluded that the trial

court properly admitted evidence of remarks defendant had made about hitting people with a baseball bat the day of the killing. The court concluded the evidence was vital to defendant's claim of self-defense. *Id.* at 463. In *State v. Schickles,* 760 P.2d 291 (Utah 1988), the court upheld the admission of evidence of defendant's prior sexual assaults of the victim of the kidnapping for which he was charged. The *Schickles* court agreed with the trial court that the evidence was relevant to the issue of defendant's intent to conceal the victim from her parents. *Id.* at 296. Recently, in *State v. Morrell,* 803 P.2d 292 (Utah App. 1990), this court upheld the admission of evidence of defendant's guilty plea to a robbery similar and prior to the robbery for which he was charged. We noted that the evidence was relevant to the controverted issue of intent and concluded the evidence was admissible under Rule 404(b) as it was critical to discredit defendant's claim that the encounter was coincidental. *Id.* at 295–97.

Looking to federal law, we note that federal courts have routinely admitted evidence of other crimes, wrongs or acts pursuant to Rule 404(b) in drug prosecutions. *See, e.g., United States v. Drew,* 894 F.2d 965, 970 (8th Cir.) (upholding admission of evidence of defendant's prior narcotics transactions as they showed, among other things, opportunity, intent, preparation and plan, the court stated: "Proximity in time combined with similarity in type of crime virtually guarantees admittance of prior bad acts evidence.... [W]hether under the rubric of 'intent,' 'knowledge,' or 'common plan or scheme,' we have repeatedly upheld the admission of prior drug transactions in cases charging narcotics violations."), *cert. denied,* —— U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990); *United States v. Sinn,* 622 F.2d 415 (8th Cir.)

---

**5.** In *State v. Cox,* 787 P.2d 4 (Utah App.1990), the State argued that certain evidence was admissible in a rape case because it showed modus operandi, or common design which rebutted a defense of consent. Although this court declined to accept the State's argument, in a footnote we described modus operandi and common design as follows: "Modus operandi is 'a distinct pattern or method of procedure

thought to be characteristic of an individual criminal and habitually followed by him.' ... Common design evidence 'refers to a larger criminal scheme of which the crime charged is only a portion.' ... Common design evidence is useful in proving that the defendant is the perpetrator of the crime." *Id.* at 781 n. 4 (citations omitted).

(evidence of defendant's previous cocaine possession admitted at trial court's discretion to prove intent or knowledge at trial for subsequent cocaine possession), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980); *United States v. Scholle,* 553 F.2d 1109 (8th Cir.) (trial court has discretion to allow admission of evidence of prior narcotics crimes to show motive, intent, preparation, opportunity, plan, knowledge, identity or absence of mistake, and previous drug related association was also admissible to "complete the story" of cocaine conspiracy and show motive and intent), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977).[6]

■ In the instant case, defendant was prosecuted for possession of marijuana with intent to distribute and possession without tax stamps. An essential element of both crimes was obviously possession. Because defendant was not the record owner of the cabin, nor was he present at the time the marijuana was discovered, the State had to prove defendant constructively possessed the marijuana. *See State v. Hansen,* 732 P.2d 127 (Utah 1987) (physical possession not required for crime of possession of controlled substance; constructive possession will satisfy requirement).[7]

The State claims the facts and circumstances of defendant's possession of substantial amounts of identically packaged marijuana only twelve days prior were highly probative of his constructive possession of the marijuana at the Timberlakes cabin, a necessary element of the offense.

We agree that the contested evidence was particularly probative on the issue of constructive possession and illustrative of defendant's common plan of marijuana distribution. The marijuana confiscated from defendant on April 29 was packaged in the identical fashion as a portion of that discovered at the cabin: It was divided into one pound amounts and packaged in identical two-gallon sized Ziploc brand bags. The accounting materials found in defendant's truck were consistent with a drug distribution operation and indicated defendant had sold one pound amounts to "Gil," the record owner of the cabin.[8] Defendant was also trailing his jet ski on April 29 at the time of his arrest—the jet ski he told the Oteros he wanted to retrieve from the cabin.

**6.** In his brief, defendant relies primarily on cases involving sexual assault and rape where appellate courts have often refused to admit evidence of prior crimes, wrongs or acts. *See, e.g., State v. Featherson,* 781 P.2d 424 (Utah 1989) (in prosecution for aggravated sexual assault, evidence of defendant's interaction with other women that same evening inadmissible as it was not probative of his intent relating to the charged assault and evidence of defendant's prior convictions for rape and sexual assault were inadmissible to show modus operandi through a common defense of victim overreaction as similarity in defense did not relate to modus operandi and was too common to be distinctive); *State v. Urlacher,* 42 Or.App. 141, 600 P.2d 445 (1979) (in rape prosecution, testimony of other women that defendant had made sexual advances to them within twelve hours prior to the charged rape was inadmissible as only minimally probative and "particularly inflammatory"); *State v. Winget,* 6 Utah 2d 243, 310 P.2d 738 (1957) (in rape prosecution evidence of similar sex acts with other people inadmissible to show common plan, motive, intent or identity); *State v. Cox,* 787 P.2d 4 (Utah App.1990) (evidence of prior non-consensual sexual acts of defendant with victim and two others was inadmissible as too common and remote, identity was not at

issue, and evidence did not show intent for charged crime). However, we find these cases factually distinguishable as the evidence was not sufficiently probative of a material issue and its potential for prejudice was great.

**7.** In *Hansen,* the supreme court noted that to prove a defendant knowingly and intentionally possessed a controlled substance the prosecution "need only establish that the produced contraband was found in a place or under circumstances indicating that the accused had the ability and the intent to exercise dominion and control over it." *Id.* at 132; *see also State v. Fox,* 709 P.2d 316, 318–19 (Utah 1985) (where contraband is "subject to [defendant's] dominion and control" constructive possession exists; sufficient nexus between drug and defendant necessary to permit inference that defendant had power and intent to exercise dominion and control); *State v. Carlson,* 635 P.2d 72 (Utah 1981) (constructive possession can be proved by circumstantial evidence if defendant's guilt established beyond reasonable doubt).

**8.** The evidence of defendant's one pound sales to "Gil" was probative in that it negated any claim that Gil was the individual in possession of the large amounts of marijuana stored at the Timberlakes cabin.

In this case, the evidence concerning his Utah County distribution conviction is not only highly probative, but it was also crucial to the prosecution's case as the State's case was built primarily on circumstantial evidence. *See State v. Shaffer*, 725 P.2d 1301, 1309 (Utah 1986) (evidence of other crimes, wrongs or acts admissible where crucial to case built primarily on circumstantial evidence). This is far different from the situation in *Featherson* where the prosecutorial need for evidence of other crimes, wrongs, or acts was minimal. 781 P.2d at 431. Accordingly, we conclude the testimony and evidence relating to defendant's April 29 distribution was properly admitted by the trial court pursuant to Rule 404(b).

## C. *Rule 403*

 Even though we have concluded that the evidence regarding the April 29 events was properly admissible under Rule 404(b), our inquiry is not complete until we conclude the evidence meets the requirements of Rule 403. Utah Rule of Evidence 403 provides, with our emphasis: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Utah appellate courts have outlined several factors to be considered when a court balances the probativeness and prejudice of evidence. These factors include "the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility." *State v. Cox*, 787 P.2d 4, 5 (Utah App.1990) (quoting *State v. Schickles*, 760 P.2d 291, 295 (Utah 1988) (quoting E. Cleary, *McCormick on Evidence*, § 190 at 565 (3d ed. 1984))); *see also State v. Morrell*, 803 P.2d 292, 293–97 (Utah App.1990). Furthermore, standing alone, the fact that the evidence may be prejudicial to defendant does not necessarily render the evidence incompetent. *See*

*State v. Johnson*, 784 P.2d 1135, 1141 (Utah 1989). If evidence is prejudicial but is at least equally probative of a critical fact, it is properly admissible.

In several Utah cases, the appellate court has upheld the trial court's admission under Rule 403. *See, e.g., Johnson*, 784 P.2d at 1141 (evidence relevant to explain circumstances of charged crime and substantially buttressing defendant's intent admissible as trial court did not clearly err under Rule 403); *Morrell*, 803 P.2d at 293–97 (although evidence clearly prejudicial to defendant, it was extremely probative of intent and State had great need of evidence of intent as no alternative proof was available).

In the instant case, after hearing argument on defendant's motion in limine, the trial court, in denying the motion, stated:

> Under these circumstances where the circumstantial evidence is the only evidence on which the State can rely and there appears to be to the court that there are matters of identity, not identity as to the person who is sitting here today, but identity as to who may have had the constructive possession of the contraband within the cabin itself and the fact that the character of the packaging and other materials are similar between that in the cabin and the evidence discovered in the vehicle and trailer of the defendant in the prior case. And also that this is necessary to complete the story of the crime for which he is on trial here today by showing how it fits into the total occurrences.

As we have previously noted, we agree with the trial court that the evidence regarding the Utah County drug conviction is highly probative on the issue of defendant's constructive possession of the marijuana in this case. However, the trial court in its analysis does not focus on the evidence's prejudicial effect. Weighing the factors required under a Rule 403 analysis, we conclude there was a great need for the evidence and no alternative way to secure it. The evidence was essential to the State's case as there was no effective alter-

native available to identify defendant as the constructive possessor of the marijuana, an essential element of the crime. Finally, unlike other more heinous or inflammatory types of prior bad act evidence, the evidence in this case was not necessarily likely to arouse the jury to overriding hostility against defendant. It is also important to note that, at the request of the State, a cautionary instruction was given to the jury regarding the contested evidence.[9]

The trial court carefully considered the evidence and concluded it was admissible. We see no abuse of discretion on the part of the trial court in admitting the evidence pursuant to Rules 404(b) and 403.

## III. INCONSISTENT STATEMENTS UNDER RULE 801(d)(1)

■ Defendant also alleges error in the court's admission of prior written statements under Utah Rule of Evidence 801(d)(1). Vickie Tooke, defendant's live-in girlfriend, gave several statements to the police beginning on the day of defendant's April 29 arrest and continuing into May 1989. These statements indicated defendant was a drug dealer who had received marijuana from another individual on April 29, 1989, and that it was this marijuana which was found in defendant's possession in Utah County and in the Timberlakes cabin in Wasatch County.

At trial, the State called Tooke as a witness. When questioned by the prosecutor, Tooke recanted her previous inculpatory statements concerning defendant, claiming she had been "coerced and tortured" by the police to provide the information. Contrary to her prior statements, she denied defendant told her he had obtained the marijuana from the other individual or that he knew anything about the marijuana found in the cabin.

As a result of Tooke's testimony at trial, the State moved for admission of her two prior written statements under Rule 801(d)(1). One was a transcript of a statement given by Tooke to the police, the other was her signed statement.

Rule 801(d)(1) provides: "A statement is not hearsay if: .... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (A) inconsistent with his testimony or the witness denies having made the statement or has forgotten...."

On appeal, defendant does not argue that the relevant portions of the statements used to impeach Tooke's testimony at trial were improperly introduced, but rather that the transcripts contained irrelevant and highly prejudicial matters which should have been masked from the jury.

The State claims defendant has waived his right to make this argument on appeal as he did not request the trial court to mask the portions he was concerned about before the statements went to the jury. The State argues that defendant cannot invite or compound error at trial and then raise it as an issue on appeal. *See State v. Tillman,* 750 P.2d 546, 560–61 (Utah 1987) (" 'invited error' is procedurally unjustified and viewed with disfavor, especially where ample opportunity has been afforded to avoid such result"); *State v. Smith,* 776 P.2d 929, 932 (Utah App.1989) ("defendant cannot lead the court into error by failing to object and then later, when he is displeased with the verdict, profit by his actions").

At trial, the following exchange occurred:

DEFENSE COUNSEL: Object to both of those exhibits on the grounds that they constitute hearsay, irrelevant to this case. That they were made at the time

---

**9.** The instruction provided:
During the trial, evidence has been received that the Defendant was engaged in other crimes, wrongs or acts in connection with his arrest in Provo, Utah on April 29, 1989. Under the Rules of Evidence of the State of Utah, you are instructed and cautioned that such evidence is not to be considered by you for

the purpose of proving that he acted in conformity therewith in connection with the incident which is the subject matter of this trial. However, such evidence is admissible and may be considered by you for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

when the witness who made the statements in her testimony here is that she was under duress at that time. Therefore and that the information contained in those exhibits is not true.

THE COURT: I don't know what else is contained in that exhibit?

PROSECUTOR: If there is any extraneous matters those can be masked but insofar as they pertain.

THE COURT: Insofar as they pertain to those specific areas in which the witnesses were questioned I will receive them.

Defendant never subsequently requested the court to mask any particular portion or portions of the statements before the statements were given to the jury as exhibits. Defendant cannot now complain as he did not ask for assistance in the matter during trial. He cannot simply ignore a potentially improper situation at trial, thus inviting or compounding error, and opt to raise it on appeal after the outcome of the action is adverse to him.

## IV. DOUBLE JEOPARDY/COLLATERAL ESTOPPEL

■ Next, defendant argues evidence of his prior crimes, wrongs, or acts was also erroneously admitted in violation of the doctrines of double jeopardy and collateral estoppel. He claims admission of evidence derived from his prior arrest, prosecution, guilty plea and conviction violated principles of collateral estoppel and placed him twice in jeopardy for the same crime. Defendant contends once he struck a plea bargain with the State, pleading guilty to the Utah County distribution charge in return for the State's dismissal of the possession and tax stamp charges, the State was

barred from further use of the facts underlying these charges.[10]

We agree with the State that, relying on *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 672–73, 107 L.Ed.2d 708 (1990), the trial court properly concluded that neither double jeopardy nor collateral estoppel barred admission of the Rule 404(b) evidence in this case. In *Dowling*, a prosecution for bank robbery, the Court upheld the admission pursuant to Federal Rule of Evidence 404(b) of evidence of the defendant's prior prosecution for burglary, attempted burglary, assault and weapons offenses even though the defendant had been acquitted of those prior offenses. The Court refused to extend the "collateral estoppel component of the Double Jeopardy Clause to exclude in all circumstances ... relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Id.* at 672.[11]

## V. SUFFICIENCY OF THE EVIDENCE

■ Finally, defendant claims the trial court erred in denying his motion to dismiss for insufficient evidence made at the close of the State's case. The State notes that on appeal defendant does not claim the evidence taken as a whole is insufficient to support his convictions, but instead limits his argument to a claim based on the court's denial of his motion made at the close of the State's evidence, thus effectively claiming the State failed to establish a *prima facie* case.

In this procedural posture, the trial court's ruling at the close of the State's case must be upheld if "upon reviewing the evidence and all inferences that can be

---

**10.** The State emphasizes that defendant does not assert the State was barred from prosecuting him for both the Utah County and Wasatch County offenses, or that the two offenses were part of a single criminal episode as defined under Utah Code Ann. § 76–1–403 (1990). Defendant, therefore, presents the limited issue of whether the fifth amendment restricts the use of otherwise admissible Rule 404(b) evidence.

**11.** Defendant also contends the use of the April 29 offenses was contrary to the plea bargain entered into in that case. He claims the State

inferentially promised that "his criminal responsibility for the Provo incident would be limited to the punishment imposed under that plea bargain." Defendant received the benefit of his plea bargain. Use of the evidence in the prosecution of the instant case did not expose defendant to additional criminal responsibility for the April 29 incidents. The evidence concerning the April 29 incidents was admitted under Rule 404(b) to identify defendant as the person committing an entirely separate offense.

reasonably drawn from it, [the appellate court] conclude[s] that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989).

The parties agree that the disputed issue at trial was who had knowledge, control, and thus constructive possession of the marijuana found in the Timberlakes cabin. We have determined that evidence of the events surrounding defendant's April 29, 1989 arrest was properly admitted at trial. Therefore, the following facts were properly before the court at the time of defendant's motion: (1) defendant had recently visited the cabin; (2) defendant was a known friend of Gil Marchbanks, the record owner of the cabin; (3) defendant had a jet ski in his possession which had been recently retrieved from the cabin; (4) documents and receipts in defendant's name were found at the cabin; (5) two snowmobiles registered to defendant were found at the cabin; (6) fourteen boxes of Ziploc bags and a triple beam scale were found at the cabin; (7) large quantities of marijuana packaged in bales in addition to one pound quantities packaged in Ziploc brand bags were found at the cabin in the large safes in the basement; (8) on April 29 defendant was arrested in possession of fourteen pounds of marijuana packaged identically to the one pound amounts found at the cabin; (9) identical boxes of Ziploc brand bags were found in connection with the Utah County prosecution as were seized in the search of the cabin; and (10) the ledger found with defendant on April 29 revealed one pound sales to "Gil".

Given the evidence presented and admitted at trial in the State's case in chief and all reasonable inferences related thereto, we conclude that there was ample evidence from which a jury could reasonably have found the elements of possession of marijuana without tax stamps affixed and with the intent to distribute.

## CONCLUSION

In sum, we uphold defendant's conviction for the offenses charged. The trial court properly denied defendant's motion to suppress evidence obtained in the search of the Timberlakes cabin as defendant did not have standing to challenge the search of the Timberlakes cabin. The trial court properly admitted evidence of defendant's April 29, 1989 criminal activities pursuant to Utah Rules of Evidence 404(b) and 403. The trial court also properly admitted prior inconsistent statements of Vickie Tooke pursuant to Utah Rule of Evidence 801(d)(1) and defendant cannot now complain that there was irrelevant and prejudicial material in those statements as he failed to request a redaction or masking of such material at trial even though he was well aware it existed. The trial court also properly denied defendant's motions to dismiss for insufficiency of the evidence and for double jeopardy and collateral estoppel violations. Accordingly, we affirm.

ORME and RUSSON, JJ., concur.