**STATE of Utah, Plaintiff and Appellee,**

v.

**Brett Allen OLSEN, Defendant and Appellant.**

**No. 930216–CA.**

Court of Appeals of Utah.

Feb. 18, 1994.

· Marcus Taylor, Richfield, for defendant and appellant.

Jan Graham and Kenneth A. Bronston, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

Defendant Brett Allen Olsen appeals from a jury verdict finding him guilty of second degree murder and mentally ill in violation of Utah Code Annotated § 76–5–203 (Supp. 1993). We affirm.

## I. FACTS

On the night of September 7, 1991, Olsen, then twenty-three years old, pulled into a gas station in Salina, Utah due to car trouble. While at the gas station, Olsen told the attendant that he was in the mood to beat someone up. After leaving the station, Olsen proceeded to a vacant lot in Salina where the victim William Paul Jensen and another person were socializing. Jensen, then thirty-two years old, had been Olsen's friend for several years.

At the vacant lot, Olsen, Jensen and another person examined the engine of Olsen's car. Two women who were friends of the men arrived in another vehicle to talk with the group. After a few minutes, Olsen took Jensen aside and asked him something about

drinking. Jensen responded that he no longer drank. Olsen became angry and slapped Jensen across the face. Jensen asked Olsen to leave, but Olsen refused and struck Jensen again. After a brief altercation, Jensen subdued Olsen on the ground and head-butted him, causing Olsen's nose to bleed. Jensen then released Olsen and told him to leave.

Olsen departed in his car, but returned approximately five minutes later with a butcher knife he had obtained from his home. He chased Jensen and finally stabbed him in the abdomen with the knife. Jensen died the next day.

Olsen was arrested shortly after the stabbing. However, approximately one month later, he escaped from custody by overpowering a guard and was a fugitive for four days. Olsen was recaptured after an exhaustive and highly publicized search involving trained dogs and door-to-door contact with area residents.

Jensen's death and Olsen's subsequent escape and recapture generated a great deal of publicity in both the print and electronic media. Several articles concerning Olsen's competency to stand trial were also published.

Approximately October 23, 1991, Olsen was committed to the Utah State Hospital for a competency evaluation. He was found incompetent to stand trial and remained at the State Hospital until August 1992. Although examiners concluded in August 1992 that Olsen had regained competency, the trial court determined otherwise and ordered that Olsen be returned to the State Hospital. Finally, on approximately October 26, 1992, Olsen was again declared competent, and the criminal proceedings continued.

On September 22, 1992, Olsen gave notice that he intended to plead insanity at trial.[1] Also on that day, he moved the court for a change of venue, claiming that it was impos-sible for him to get a fair and impartial trial in Sevier County, where Salina is located, due to extensive pretrial publicity.[2]

The trial court denied the motion for change of venue, and the case proceeded to trial. During jury selection, the trial court conducted an extensive voir dire focusing on pre-trial publicity and dismissed two prospective jurors who indicated that they knew about the case and could not fairly decide it.

At trial, Olsen attempted to introduce extensive testimony through his mother of his father's abuse of him as a child and young adult. Although the trial court allowed considerable testimony from Olsen's mother, it limited the scope of the testimony and ruled that it was more appropriate to elicit that evidence through the expert witnesses, who would testify as to the relevance of prior abuse to Olsen's mental State. Olsen objected to the court's ruling and proffered Mrs. Olsen's testimony concerning specific instances of past trauma. Also at trial, the State elicited evidence concerning Olsen's prior mental health evaluations and treatment when he was involved with the criminal justice system.

The jury returned a verdict of guilty and mentally ill,[3] from which Olsen now appeals. Before this court, Olsen claims that the trial court erred by: (1) denying Olsen's motion for change of venue, (2) permitting evidence of Olsen's prior criminal conduct to be admitted at trial, and (3) excluding evidence of prior abuse of Olsen by his father. Olsen also asserts that the evidence at trial was insufficient to support the jury's verdict.

## II. CHANGE OF VENUE

Olsen claims the trial court committed reversible error in denying his motion for change of venue. He asserts that the publicity surrounding Jensen's death and Olsen's

---

1. The fact that Olsen actually committed the homicide was never an issue.

2. Olsen also requested that the trial not be held in the nearby counties of Piute and Wayne due to publicity in those counties as well.

3. A verdict of guilty and mentally ill means the jury determined that although Olsen was mental-ly ill when the homicide was committed, he did not lack the mental state required for murder under Utah Code Ann. § 76–5–203. *See* Utah Code Ann. § 76–2–305(1) (Supp.1993) (mental illness is defense to crime only when defendant, as result of mental illness, lacked mental state required as element of offense charged).

escape and recapture was so extensive and inflammatory as to create a reasonable likelihood that he could not receive a fair trial in Sevier County.

■ The decision to grant or deny a motion for a change of venue is within the discretion of the trial court and will not be reversed "absent clear abuse of that discretion." *State v. Cayer*, 814 P.2d 604, 608 (Utah App.1991) (citing *State v. James*, 767 P.2d 549, 551 (Utah 1989), *on reh'g*, 819 P.2d 781 (Utah 1991)).

■ The constitutions of both the United States and Utah guarantee a defendant the right to trial by an impartial jury. U.S. Const. amend. VI; Utah Const. art. I, § 12; *James*, 767 P.2d at 551. In *James*, the Utah Supreme Court set forth four factors that trial courts should consider when deciding whether to order a change of venue: "(1) the standing of the victim and the accused in the community; (2) the size of the community; (3) the nature and gravity of the offense; and (4) the nature and extent of the publicity." *James*, 767 P.2d at 552; *accord Cayer*, 814 P.2d at 608–09.

■ However, " 'Evidence of the pervasiveness of the pre-trial publicity is not enough to answer the question of whether the jury was fair and impartial.' " *Cayer*, 814 P.2d at 609 (quoting *State v. Lafferty*, 749 P.2d 1239, 1250 (Utah 1988)). Instead, to reverse a conviction based on a claim that a change of venue should have been granted, a defendant must also show that he or she was actually prejudiced by the denial. *State v. Bishop*, 753 P.2d 439, 459 (Utah 1988); *Cayer*, 814 P.2d at 609; *see also Lafferty*, 749 P.2d at 1251 n. 9 (noting that Lafferty failed to show jurors held strong opinions as to his guilt).

■ Here, we need not consider whether the *James* factors were met because Olsen

has failed to show that he was prejudiced by any adverse publicity. To support his claim of prejudice, Olsen asserts without any factual basis that after voir dire, five panel members remained on the jury who "had acknowledged preconceived opinions about the case." That is false.

The trial court carefully questioned the potential jurors concerning any knowledge of the case and any bias based on that knowledge. Of the sixteen potential panel members, seven responded affirmatively when asked if they had any knowledge of the facts of the case. Those seven were then asked if they had formed any opinion about the case. Two said that they had, and were questioned individually by the court. After individual questioning, those two jurors were dismissed. The defendant then passed the jury for cause. Therefore, although five jurors remained on the panel who had some prior knowledge of the case, they never acknowledged having any preconceived opinions and were not challenged by Olsen.

The careful voir dire conducted by the judge, followed by Olsen's passing the jury for cause, was sufficient to insure that Olsen received a fair trial. *See Cayer*, 814 P.2d at 610 (defendant failed to show prejudice where exhaustive voir dire was conducted and defendant passed jury for cause). Defendant's failure to show that he was actually prejudiced by the trial court's denial of his motion for change of venue defeats his claim of error on this point.[4]

## III. ADMISSION OF PRIOR CRIMES OR BAD ACTS

■ Olsen claims that evidence of his prior involvement with the criminal justice system was improperly admitted at trial in violation of Utah Rules of Evidence 404(b) and 609,[5] and that the information elicited was harmful.

---

4. Olsen claims that he does not have to show prejudice because prejudice was not discussed in *James*. However, *James* involved an interlocutory appeal, so prejudice at trial was not an issue. *James*, 767 P.2d at 550. *Bishop* and *Cayer* both make clear that actual prejudice must be shown. *Bishop*, 753 P.2d at 459; *Cayer*, 814 P.2d at 609.

5. In his brief, Olsen cites Utah Rule of Evidence 609 to support his claim that evidence of past bad acts should not have been admitted. However, Olsen's failure to provide any argument or analysis in support of his assertion on this point precludes us from considering it on appeal. *Baker v. Baker*, 866 P.2d 540, 544–45 (Utah App. 1993) (citing *First Sec. Bank v. Creech*, 858 P.2d

At trial, Olsen's counsel moved to exclude mention of other crimes or wrongdoing he committed. Olsen's counsel stated that he may introduce evidence of Olsen's escape, and did not want to thereby open the door to discussion of Olsen's extensive criminal history. The trial court granted the motion to exclude discussion of prior crimes in the event that evidence of the escape was presented, but delayed a decision as to any mention of Olsen's criminal past that might arise when the various experts in the case testified about the evaluations performed on Olsen.

The trial court reasoned that Olsen had been evaluated several times by mental health professionals and each evaluation was done while Olsen was under the jurisdiction of the criminal justice system as a juvenile or adult. Because Olsen intended to present a defense based on insanity (claiming that he lacked the intent necessary to commit murder), experts were going to testify about the results of those evaluations. The trial court stated that the experts must be able to testify as to the bases of their opinions, which might include mention of Olsen's criminal conduct that prompted the evaluations. The court said it would make a ruling during the trial if and when such situations arose. Olsen's counsel agreed, stating "we'll make our objections as we go along."

■ After Olsen made his motion, the State on several occasions elicited, in a general fashion, testimony that Olsen was involved with the criminal justice system when the evaluations were conducted.[6] No specific crimes were mentioned. At no time did Olsen's counsel object to this line of questioning.[7]

■ The admission of evidence under Rule 404 is a question of law that we review for correctness. *State v. O'Neil,* 848 P.2d 694, 698 (Utah App.), *cert. denied,* 859 P.2d 585 (Utah 1993). "However, the trial court's subsidiary factual determinations should be given deference by the appellate court and only be overruled if they are clearly erroneous." *Id.* at 698–99 (citing *State v. Taylor,* 818 P.2d 561, 568 (Utah App.1991)); *see State v. Thurman,* 846 P.2d 1256, 1270 n. 11 (Utah 1993). A trial court's ruling based on Rule 403 will not be reversed unless its decision " 'was beyond the limits of reasonability.' " *O'Neil,* 848 P.2d at 699 (quoting *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992)).

Defendant argues that evidence of his prior contact with the criminal justice system was inadmissible under Rule 404(b) of the Utah Rules of Evidence. Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he [or she] acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, in-

---

958, 962 (Utah 1993)); *see* Utah R.App.P. 24(a)(9).

6. A typical example of such testimony is set forth below. Here, Olsen's expert witness testified at some length as to the results of evaluations performed on Olsen. In response to questions on cross examination concerning the circumstances of tests done when Olsen was 16 years old, the following colloquy took place:

> State: Isn't it true that he was under the jurisdiction of the Juvenile Court at the time [the evaluations were conducted]?
> Expert: He was under the jurisdiction of the Juvenile Court. That's true.
> State: And isn't that where we deal with juvenile criminals? Isn't that how he gets there?
> Expert: Ah, well, I'm a little hesitant. My impression is that he went to LDS Hospital at the behest of his parents, rather than the juvenile court.... Now it's true that he was under the [juvenile court's] jurisdiction, but that's

why I hesitated on it. I think that [it] was the parents that made that decision.

Perhaps the most damaging piece of evidence received was presented by one of the state's experts who remarked that Olsen had "a history of other criminal behaviors" besides the instant offense.

7. Olsen claims his attorney objected to questioning of this sort at a bench conference. It is true that during cross examination of Olsen's mother concerning the fact that Olsen was involved in the criminal justice system when the evaluations were conducted, Olsen's attorney asked for and was granted a bench conference. However, there is no record of what transpired at the bench conference. We know only that the State continued the same line of questioning after the bench conference. Failure to make a record of the bench conference, and therefore to preserve any objection, prevents consideration of the same on appeal.

tent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■　When reviewing whether evidence of prior bad acts is admissible, we first determine if the evidence is admissible under Rule 404(b). *O'Neil,* 848 P.2d at 699; *accord Taylor,* 818 P.2d at 571. Next, we consider whether the evidence meets the requirements of Rule 403.[8] Finally, if we determine that the requirements of either of those two rules have not been met, we then decide whether admission of the evidence amounted to prejudicial error. *O'Neil,* 848 P.2d at 699; *Taylor,* 818 P.2d at 568.

The State argues, and Olsen basically concedes, that Olsen did not object properly to the prosecution's elicitation of Olsen's prior criminal acts. We agree. Olsen's motion addressed issues concerning evidence of Olsen's escape. And, as we discussed above, Olsen cannot rely on an alleged objection raised in a bench conference that was not preserved on the record. Finally, Olsen's counsel did not object when the testimony of prior bad acts came in and did not ask that any of the testimony be stricken.

■　Nonetheless, Olsen asks us to consider the issue under a plain error standard. Under that standard, we will not reverse unless we determine that an error existed, and that the error was both obvious and harmful. *State v. Archuleta,* 850 P.2d 1232, 1245–46 (Utah) (citing *State v. Tillman,* 750 P.2d 546, 551 (Utah 1987)), *cert. denied,* —— U.S. ——, 114 S.Ct. 476, 126 L.Ed.2d 427 (1993); *State v. Emmett,* 839 P.2d 781, 785 (Utah 1992). An error is harmful if the likelihood of a different result is " 'sufficiently high to undermine confidence in the verdict.' " *Hamilton,* 827 P.2d at 240 (quoting *State v. Knight,* 734 P.2d 913, 920 (Utah 1987)).

■　Applying the plain error analysis here, however, does not aid Olsen because admission of the evidence in question was

correct under Rules 404(b) and 403. Rule 404(b) is an "inclusionary" rule. *Taylor,* 818 P.2d at 568. In other words, it "allows admission of relevant evidence 'other than to show merely the general disposition of the defendant.' " *Id.* (quoting *State v. Jamison,* 767 P.2d 134, 137 (Utah App.1989)). "Prior bad act evidence is only excluded where the *sole* reason it is being offered is to prove bad character or to show that a person acted in conformity with that character." *O'Neil,* 848 P.2d at 700.

Evidence of Olsen's prior bad acts tends to disprove his defense that he lacked the intent to murder Jensen. Olsen used the evaluations at trial to show that he was mentally ill and not responsible for his actions. The State's theory of the case was that Olsen was using a false claim of mental illness to escape responsibility for the crime. Under Utah Code Ann. § 76–2–305(4) (Supp.1993), "Mental illness does not mean a personality or character disorder or abnormality manifested only by repeated criminal conduct." Relying on that section, the State tried to show that Olsen's only real problem was his propensity for crime, which does not absolve him of liability for his acts.[9]

The only controverted issue at trial was Olsen's intent to commit the crime for which he was charged. "Admission of prior bad acts is proper when it tends to prove a contested material element of the crime charged." *State v. Morrell,* 803 P.2d 292, 295 (Utah App.1990) (where defendant's intent was contested issue, State could discredit his theory of events with evidence of prior bad act); *see also Taylor,* 818 P.2d at 569 (citing with approval cases in which evidence of prior bad acts was permitted when vital to refute defendant's defense at trial). Here, because the issue of intent was critical, the State properly attempted to discredit Olsen's insanity defense with evidence showing that

---

8. Rule 403 provides:
　　Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

9. The State's reliance on this approach is evident from the record: The prosecution specifically questioned Olsen's expert on section 76–2–305(4), and a jury instruction was given relating the language of that section.

his only disability was a tendency to commit crimes.

Having determined that testimony of other bad acts was properly admitted under Rule 404(b), we must now consider whether such evidence meets the requirements of Rule 403. The factors to consider in balancing the probativeness of evidence against its prejudicial effect include

> "the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility."

*O'Neil,* 848 P.2d at 701 (quoting *State v. Shickles,* 760 P.2d 291, 295–96 (Utah 1988)).

In the case at bar, no actual evidence of any particular bad act was admitted. The State merely made references to prior contact with the criminal justice system that led to Olsen's evaluations. The jury was not apprised of the reason why Olsen was involved with the court system. Also, most of the evidence concerning Olsen's sanity, and therefore his ability to form the requisite intent, came from the evaluations. Therefore, the need for evidence bearing on the evaluations was great. Finally, because no specific crimes were mentioned, it is improbable that the evidence admitted could have incited the jury. In sum, nothing indicates that by permitting the testimony the trial court exceeded the limits of reasonability. We therefore find no error on the part of the trial court.

■ Even if we were to determine that the trial court erred and that such error was plain, we would conclude nonetheless that given the facts of this case, the error was harmless. In determining whether an error is harmful, that is, whether the likelihood of a different outcome is sufficiently high to undermine confidence in the verdict,

we look at "a host of factors, including ... the overall strength of the State's case." *Hamilton,* 827 P.2d at 240 (citing *State v. Hackford,* 737 P.2d 200, 205 (Utah 1987) (evidence of prior bad act was not so great when compared to other evidence of defendant's guilt)); *Archuleta,* 850 P.2d at 1246 (jury instruction error that required invalidation of one of four aggravating circumstances in death penalty case was not harmful since other evidence was sufficient to support defendant's conviction).

Here, the State's case against Olsen was strong. The fact that Olsen actually committed the homicide was not contested at trial. The only issue concerned Olsen's mental state at the time of the stabbing. Three expert witnesses (one testifying for Olsen and two testifying for the State) gave their opinion about Olsen's mental state at the time of the homicide. All three agreed that Olsen suffered from mental illness, including severe depression. However, one of the State's experts opined that Olsen "does not have the kind of mental illness or insanity that would cause him to be unaware of his actions." The State's other expert testified that in his opinion, Olsen intended to cause serious damage to Jensen, although he did not intend to kill him.[10] Finally, Olsen's own expert gave contradictory and somewhat confusing testimony as to whether Olsen possessed the requisite mental state. The experts' testimony therefore firmly supports the jury's finding that although Olsen was mentally ill, he could appreciate his actions.

The strength of the State's case against Olsen leads us to conclude that there is no substantial likelihood that the outcome would have been different absent admission of the questionable evidence. We therefore reject Olsen's claim of plain error.

## IV. EXCLUSION OF PRIOR ABUSE EVIDENCE

■ Olsen claims that the trial court committed reversible error by prohibiting Ol-

---

**10.** Under Utah Code Ann. § 76–5–203(1)(b) (Supp.1993), a person is guilty of homicide if while intending to cause serious bodily injury to another, he or she commits an act that is clearly dangerous to human life that causes the death of another. Olsen was charged under this section,

as well as section 76–5–203(1)(a), which addresses intentional killings. Therefore, the expert's opinion that Olsen meant to cause serious injury to Jensen would support a finding of guilt under section 76–5–203(1)(b).

sen's mother from testifying about abuse he suffered at the hand of his father. According to Olsen, that evidence was relevant to corroborate his claim that he was mentally unstable and lacked intent to commit the homicide. The State counters that such evidence was cumulative and marginally relevant, and if any error·existed in its exclusion, the error was harmless.

■ A defendant has a right to adduce evidence that would tend to disprove specific intent to commit a crime. *State v. Smith*, 728 P.2d 1014, 1015 (Utah 1986); *State v. Sessions*, 645 P.2d 643, 645 (Utah 1982). In this case, however, Olsen had ample opportunity to present evidence of his father's abuse. Despite the trial court's ruling on the matter, Mrs. Olsen testified to several instances where Mr. Olsen allegedly abused his son. She testified that (1) Mr. Olsen force-fed Olsen when he was a baby and slapped his face when he would not eat, (2) Olsen was placed in foster care twice due to his father's abuse, (3) Olsen's father slammed him to the ground and repeatedly bashed his head into the earth when he was thirteen or fourteen, (4) Mr. Olsen hit his son for playing with Mr. Olsen's tapes and beat his son for sitting at the table in his underwear, (5) Mr. Olsen repeatedly referred to his son by derogatory names, and (6) Mr. Olsen ridiculed Olsen for attending cosmetology school. Also, Mrs. Olsen made general statements about the pervasiveness of the abuse, including that Mr. Olsen abused his son "as often as possible." [11]

Mrs. Olsen testified at some length about Olsen's abuse as a child and young adult. The jury was fully informed that Olsen had been abused on numerous occasions. Olsen's expert testified that he detected head trauma caused by the abuse. Moreover, both of the State's experts relied on factors of abuse in reaching their conclusions. Indeed, Olsen elicited specific evidence of abuse from one of the State's experts on cross examination, including that Mr. Olsen had hit his son with a belt, dip stick and wrench, and had thrown Olsen against the floor and wall. Given the fact that Mrs. Olsen was permitted to testify about abuse at some length, and that the experts all mentioned abuse as a factor they considered, it was not error for the trial court to prohibit Mrs. Olsen from testifying as to practically every traumatic event suffered by Olsen in his life. Such testimony was cumulative and much of it was marginally relevant. The trial court did not abuse its discretion in limiting it accordingly. [12]

## V. SUFFICIENCY OF THE EVIDENCE

■ Olsen's final claim on appeal is that the evidence presented at trial is insufficient to support the jury's verdict of guilty and mentally ill. When a jury verdict is challenged, we review the evidence and all reasonable inferences that may be drawn from it in a light most favorable to the jury's verdict. *State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992). We reverse " 'only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he [or she] was convicted.' " *Id.* (quoting *State v. Booker*, 709 P.2d 342, 345 (Utah 1985)).

All three expert witnesses agreed that Olsen suffered from mental illness, including severe depression. However, as we dis-

---

11. From the record it is apparent that Olsen intended to introduce at trial almost every traumatic event that occurred in his life. His counsel began by questioning Mrs. Olsen about the difficult birth of Olsen, and then talked about the case of pneumonia Olsen had when he was eight months old. Soon thereafter, the trial court interjected, seeking to limit Mrs. Olsen's testimony to more relevant topics.

12. Olsen also claims he was impeded from presenting testimony that when Jensen wrestled him to the ground and head-butted him, he associated the incident with a prior beating by his father and transferred his hatred for his father to Jen-

sen. This in turn could have caused him to suffer insanity or impaired judgment when he killed Jensen. However, the trial transcript reveals that Olsen did pursue this angle. His mother testified about the particular incident in which Mr. Olsen pounded his·son's head into the ground, and also stated that when Olsen returned home to get the knife he used to stab Jensen, he told Mrs. Olsen that his fight with Jensen reminded him of the incident with his father. Later, Olsen's expert testified, "There's a symbolic significance to [Olsen] being hit on the head because when that happens, he sees himself again being hit by his father."

cussed in section III, both of the State's experts testified that Olsen did possess the intent to kill or cause serious bodily injury to Jensen when he stabbed the victim in the abdomen. That testimony, coupled with the less than certain testimony of Olsen's own expert, firmly supports the jury's finding that Olsen was guilty and mentally ill. We therefore reject Olsen's attack on the sufficiency of the evidence.

## VI.  CONCLUSION

Olsen's failure to demonstrate actual prejudice due to the trial court's denial of his motion for a change of venue defeats his claim of error on that issue. The trial court did not err by permitting the State to elicit evidence of Olsen's contact with the criminal justice system, and even if the court did err, such admission was harmless. The trial court's limitation of cumulative and marginally relevant testimony about past traumatic occurrences in Olsen's life was not error. Finally, the jury's verdict is supported by sufficient evidence. Therefore, the guilty and mentally ill verdict is affirmed.

BILLINGS and GREENWOOD, JJ., concur.