**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert D. LOVEGREN and Gregory Wade Southern, Defendants and Appellants.**

**No. 910032–CA.**

Court of Appeals of Utah.

March 30, 1992.

Thomas H. Means and Michael D. Esplin, Provo, for defendants and appellants.

R. Paul Van Dam and David B. Thompson, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Defendants Robert D. Lovegren and Gregory Wade Southern appeal their convictions of possession of a controlled substance with the intent to distribute, a second degree felony, in violation of Utah

Code Ann. § 58–37–8(1)(a)(iv) (Supp.1989). We reverse and remand.

## I. FACTS

On June 18, 1988, Utah Highway Patrol Officer Doug Rawlinson, during a search of Defendants' vehicle following a traffic stop, discovered a baggie containing a white powdery substance and arrested Defendants for possession of a controlled substance with intent to distribute.

Prior to the arrest, Officer Rawlinson was traveling on Interstate 15 near Spanish Fork, when he noticed that Defendants' vehicle was traveling at sixty-five miles per hour and one-and-a-half car lengths behind another vehicle, and that its occupants were not wearing seat belts. Accordingly, Officer Rawlinson pulled Defendants over for the purpose of citing the driver for following too closely, in violation of Utah Code Ann. § 41–6–62 (1988), and both occupants for not wearing seat belts, in violation of Utah Code Ann. § 41–6–182 (1988). Upon approaching Defendants' vehicle, Officer Rawlinson observed that Defendants were wearing sunglasses and that the vehicle was cluttered with garbage. Officer Rawlinson asked Lovegren, the driver, to produce his driver's license and the vehicle registration. Lovegren responded that he had lost his driver's license and that the vehicle belonged to his brother. Lovegren then accompanied Officer Rawlinson to his police vehicle, where Officer Rawlinson confirmed that Lovegren did have a valid driver's license. While in the police vehicle, Lovegren removed his sunglasses, revealing bloodshot eyes. Suspecting possible drug or alcohol use, Officer Rawlinson began to question Lovegren about his trip. Lovegren gave evasive responses and became visibly nervous as the questioning progressed. Officer Rawlinson then issued Lovegren a warning citation for following too closely and issued a citation for the seat belt violation, as well as one for having a defective brake light, which the officer had discovered after stopping the vehicle.

After issuing the citations, Officer Rawlinson and Lovegren returned to Defendants' vehicle, whereupon Officer Rawlinson asked Southern for his driver's license. Southern replied that his license had been suspended because of two DUI's. Officer Rawlinson asked Southern to remove his sunglasses, which he did, revealing bloodshot eyes. Officer Rawlinson then asked Defendants what they had been drinking. Southern said that he had consumed a six-pack, while Lovegren contended that he had not consumed anything. Although Officer Rawlinson testified that he suspected that Defendants were under the influence of drugs or alcohol, he did not conduct any sobriety tests to confirm or dispel his suspicions.

Officer Rawlinson then requested, and received, permission from both Defendants to search the vehicle. During the search, Officer Rawlinson found a partially full beer can and several empty beer cans in the passenger compartment of the vehicle. Officer Rawlinson asked Lovegren for permission to search the trunk of the vehicle, to which Lovegren responded by giving permission, but stating that he did not have the key.

At this point, Officer Rawlinson became concerned for his safety. He asked Defendants whether they had any weapons, to which they responded in the negative. He asked Southern if he would mind being patted down, and Southern replied "no." During the pat down, Officer Rawlinson felt an object in Southern's pocket, which the officer thought might be a knife. Retrieving the object, Officer Rawlinson discovered that it was a set of keys. Southern claimed that he did not know to whom the keys belonged. Officer Rawlinson suggested that the keys might fit the trunk, and Lovegren replied, "I guess we can try." After Lovegren took the keys and was unsuccessful in opening the trunk, Officer Rawlinson attempted to open the trunk and did. Among other items, the trunk contained a bag of dirty laundry and two suitcases. Officer Rawlinson requested Lovegren's permission to search the suitcases, to which Lovegren responded that they were not his, but that the officer could search them anyway.

One of the suitcases contained a cookie box, in which, upon further examination, Officer Rawlinson discovered a baggie containing a white, powdery substance. Lovegren grabbed the cookie box from Officer Rawlinson, and said "you can't have that. That's mine." After taking the box, Lovegren ran to the passenger compartment of the car and sat there for about a minute. Lovegren then exited the car and tossed the box to Southern, who ran up the road with it. Both Defendants were apprehended and subsequently arrested for possession of a controlled substance with intent to distribute.

Prior to trial, Defendants moved to suppress evidence of the drugs found in the cookie box, claiming that it was obtained as a result of an illegal search and seizure. The trial court denied the motion, and Defendants pleaded no contest to the charge of possession of a controlled substance with the intent to distribute, conditional upon preserving the right to appeal the denial of their motion to suppress. *See State v. Sery*, 758 P.2d 935, 938 (Utah App.1988). Defendants appealed the denial of their motion to this court, *see State v. Lovegren*, 798 P.2d 767 (Utah App.1990), which concluded that the stop was not a pretext stop, *see id.* at 771 n. 10, and remanded the case to the trial court for further findings of fact on the remaining issues.

Defendants again appeal the denial of their motion, raising the following issues: (1) Was the continued detention of Defendants after the purpose of the initial traffic stop had been fulfilled justified by a reasonable suspicion of criminal activity? (2) Was consent to the search lawfully obtained by Officer Rawlinson, and was such consent sufficiently attenuated from the prior police conduct to purge any possible taint of the prior conduct? [1]

## II.  STANDARD OF REVIEW

"In absence of clear error, the trial court's findings of fact underlying its decision to grant or deny the suppression motion must be upheld. However, as for the trial court's legal conclusions in regards thereto, the correction of error standard applies." *State v. Steward*, 806 P.2d 213, 215 (Utah App.1991) (citations omitted).

## III.  ANALYSIS

### A.  Initial Stop

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. That provision has been extended to require that "[a]lthough a person has a lesser expectation of privacy in a car than in his or her home, one does not lose the protection of the Fourth Amendment while in an automobile." *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) (citation omitted). Accordingly, the stopping of an automobile and the consequent detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment "even if the purpose of the stop is limited and the resulting detention brief." *State v. Steward*, 806 P.2d 213, 215 (Utah App.1991) (citation omitted).

However, in *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968), the Supreme Court cautioned that the Fourth Amendment does not prohibit all seizures, but only *unreasonable* ones. In order to determine whether a seizure is reasonable, we ask the following two questions: (1) Was the police officer's action justified at its inception?, and (2) Was the officer's action reasonably related in scope to the circumstances which justified the interference in the first place? *Id.*, 392 U.S. at 19–20, 88 S.Ct. at 1879; *accord State v. Robinson*, 797 P.2d 431, 435 (Utah App.1990).

As to the first question, the stopping of an automobile is constitutionally justified if the stop is incident to a

---

**1.** Defendants raise several other arguments on appeal, which we do not address because of our resolution of these issues.

lawful citation for a traffic violation, or based upon a reasonable and articulable suspicion that the defendant has committed or is about to commit a crime. *State v. Talbot*, 792 P.2d 489, 491 (Utah App.1990). We previously held in *State v. Lovegren*, 798 P.2d 767 (Utah App.1990), that the stop was justified at its inception as it was based on traffic violations.

However, Officer Rawlinson's actions must also be reasonably related in length and scope to the stop of Defendants' vehicle for the aforementioned traffic violations. In this regard, the Supreme Court has stated that the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Likewise, the Utah Supreme Court has held that the length and scope of a detention for a traffic violation "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879).

■ Furthermore, once the reasons for the initial stop of the vehicle have been completed, the occupants must be allowed to proceed on their way. "Any further temporary detention for investigative questioning after the fulfillment of the purpose for the initial traffic stop is justified under the fourth amendment only if the detaining officer has a reasonable suspicion of serious criminal activity." *State v. Robinson*, 797 P.2d 431, 435 (Utah App.1990) (citing *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988)); *see also State v. Lopez*, 186 Utah Adv.Rep. 17, 27 (Utah App. 1992) (Russon, J., concurring in part and dissenting in part) (unless circumstances surrounding a traffic stop give rise to a reasonable suspicion of criminal activity or reveal another reason to further detain the individual, an officer must simply issue the citation and allow the individual to leave). Whether reasonable suspicion exists depends upon the "totality of the circumstances." *State v. Steward*, 806 P.2d 213, 215 (Utah App.1991) (quoting *State v.*

*Baird*, 763 P.2d 1214, 1216 (Utah App. 1988)).

■ Our inquiry therefore focuses on whether Officer Rawlinson had a reasonable articulable suspicion of criminal activity that justified further detention of Defendants in this case. *Robinson*, 797 P.2d at 435. The trial court articulated the following facts as the basis for its determination that Officer Rawlinson's continued detention of Defendants was permissible: (1) Lovegren's nervous and evasive behavior when questioned about the trip; (2) the cluttered condition of the car; and (3) Defendants' appearance, specifically their bloodshot eyes.

It is well settled that nervous behavior when confronted by a police officer does not give rise to a reasonable suspicion of criminal activity. *See, e.g., State v. Godina–Luna*, 826 P.2d 652, 654 (Utah App. 1992); *Robinson*, 797 P.2d at 436. "Such nervous conduct ... is consistent with innocent as well as with criminal behavior." *State v. Sierra*, 754 P.2d 972, 976 (Utah App.1988), *rev'd on other grounds, State v. Arroyo*, 796 P.2d 684 (Utah 1990). Nor does the fact that the car was cluttered with "pop cans, beer cans, cigarette packages and ashes" indicate that Defendants were involved in criminal activity. The "lived-in" look of the car no more suggests that the occupants are drug runners than college students on a cross-country trip. And while bloodshot eyes can indicate the presence of drugs or alcohol, they are equally indicative of dust in one's eyes or lack of sleep.

Moreover, Officer Rawlinson did nothing to confirm or deny his suspicion that Defendants were under the influence of drugs or alcohol. He did not administer a sobriety test or take any other appropriate action to determine whether Defendants' bloodshot eyes were the result of drugs or alcohol use. Without any other indication of criminal activity, the officer simply made the decision to search the car. We are therefore convinced that Officer Rawlinson's decision to search Defendants' vehicle was based on nothing more than a "hunch" that the search would yield drugs.

In short, Officer Rawlinson was unable to articulate sufficient facts that would lead a reasonable person to conclude that Defendants were under the influence of drugs or alcohol, much less that they had committed or were about to commit a crime, such as drug trafficking. Although Officer Rawlinson's "hunch" ultimately proved to be correct, a "hunch," without more, is not sufficient to raise a reasonable articulable suspicion of criminal activity. *Johnson*, 805 P.2d at 764 (citing *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883); *accord Godina–Luna*, 826 P.2d at 654. Accordingly, we conclude that Officer Rawlinson's detention of Defendants exceeded the scope of the traffic stop, was not justified by a reasonable suspicion of criminal activity, and was therefore illegal.

### B. Consent

We next address the trial court's determination that consent to the search was lawfully obtained by Officer Rawlinson, and whether such consent was sufficiently attenuated from the prior police illegality to purge the taint of the prior illegal conduct. The burden is upon the State to show that the consent was both voluntary and not obtained by exploitation of the prior illegality. *State v. Arroyo*, 796 P.2d 684, 688 (Utah 1990). Since both prongs are necessary in order for the evidence to be admissible, *id.*, we will consider the exploitation prong first.

This analysis focuses on "whether ... the evidence to which instant objection is made has been come at by exploitation of [a prior] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (quoting Maguire, *Evidence of Guilt*, 221 (1959)). In order to defeat an objection based on exploitation, the State must "establish the existence of intervening factors which prove that the consent was sufficiently attenuated from the illegal stop." *Arroyo*, 796 P.2d at 691

(quoting *United States v. Melendez–Gonzalez*, 727 F.2d 407, 414 (5th Cir.1984)). "The factors to be considered in an exploitation analysis include temporal proximity of the illegality and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct." *State v. Godina–Luna*, 826 P.2d at 654 (Utah App.1992) (citing *Arroyo*, 796 P.2d at 690–91 n. 4).

In the case at bar, intervening factors simply do not exist. Officer Rawlinson's attempt to obtain Defendants' consent to search occurred within the course of the prior illegal conduct; it was nothing more than a continuation of the illegal detention of Defendants' vehicle. Nor is there a time lapse that would support a determination of attenuation. Lastly, the fact that Officer Rawlinson decided to search the vehicle without making *any* attempt to confirm or dispel his suspicion that Defendants were under the influence of drugs or alcohol strongly suggests that the purpose of his actions was not to discover whether Defendants were using drugs or alcohol, but rather to use that as an excuse to permit him to search the vehicle. Accordingly, we conclude that consent, if given, was sufficiently connected to the prior illegal conduct to be considered an exploitation of the illegal detention of Defendants' vehicle.[2]

### IV. CONCLUSION

Courts have consistently restricted police behavior by prohibiting unreasonable searches and seizures. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, this determination rests on a simple two-pronged analysis: (1) Was the police officer's action justified at its inception?, and (2) Was the officer's action reasonably related in scope to the circumstances which justified the interference in the first place? *Id.*, 392 U.S. at 19–20, 88 S.Ct. at 1879. One of the central reasons for the *Terry* test is that it pre-

---

**2.** Since the State does not prevail on the exploitation prong, we need not consider whether the consent, if given, was voluntary. *See Arroyo*, 796 P.2d at 688 (evidence obtained in searches following police illegality must be both voluntary and not obtained by exploitation of prior illegality to be admissible).

vents officers from using a traffic stop as a springboard into further investigation unless in the course of such a stop, a reasonable suspicion, based on articulable facts, of criminal activity arises. In the case at bar, Officer Rawlinson's conduct exceeded the scope of detention for the traffic stop without the requisite reasonable suspicion of criminal activity. Accordingly, we reverse the trial court's denial of Defendants' motion to suppress, and remand this matter for further proceedings consistent with this opinion.

BILLINGS and GREENWOOD, JJ., concur.