**STATE of Utah, Plaintiff and Appellee,**

v.

**Todd Allen PARKER, Defendant and Appellant.**

No. 910265–CA.

Court of Appeals of Utah.

June 12, 1992.

Joan C. Watt and James C. Bradshaw, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Kris C. Leonard, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, JACKSON and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Todd Allen Parker appeals his convictions of three counts of burglary of a dwelling, a second degree felony, in violation of Utah Code Ann. § 76–6–202 (1990). We reverse and remand.

## FACTS

On the night of September 5 and the early morning hours of September 6, 1990, three garages in and around a West Jordan subdivision in Salt Lake County were burglarized. In response to a dispatch call, Deputy Wayne Dial drove to the home of one of the victims, Sharon Gamboa. Mrs. Gamboa informed him that she had heard someone in the garage and, upon investigation, discovered that some items had been removed from the vehicles therein. The outside door to the garage was ajar, a screen had been cut from one of the garage windows, and the window had been opened. Mrs. Gamboa then described two men whom she had seen immediately thereafter

appear in the vicinity of her garage, walk across her lawn, and proceed on a sidewalk in front of her house.

During a subsequent search of a ballpark area located near Mrs. Gamboa's house, Deputy Dial found an unoccupied, parked vehicle. He ran a license plate check, discovered that the owner was Elna LaFreniere, and requested that dispatch contact her. Deputy Dial then left the car and, with the assistance of four other officers, established a perimeter watch around the vehicle, covering the five exits from the ballpark area. Approximately ten minutes after establishing the perimeter, another officer, Deputy Robert Bobrowski, saw the taillights of the vehicle light up and move northbound across the lawn of the ballpark area. After further investigation, he discovered tire tracks across the lawn from the spot where the vehicle had been parked.

Dispatch contacted Mrs. LaFreniere and learned that she thought that the vehicle was in her garage but, upon looking, she discovered that both the vehicle and her grandson, Parker, were gone. Dispatch asked Mrs. LaFreniere if she wanted the vehicle reported as stolen, and she responded that she did not. Dispatch relayed this information to Deputy Dial. Nevertheless, Corporal Troy Naylor was sent to Mrs. LaFreniere's home and spoke briefly with her concerning the absence of both her vehicle and her grandson. He then positioned his patrol car approximately two houses away from her house to await the vehicle's return.

Ten to fifteen minutes later, Parker arrived, driving his grandmother's vehicle. According to Corporal Naylor's estimate, Parker was driving at a speed of at least forty-five miles per hour in a twenty-five mile per hour zone. The vehicle skidded into the driveway, at which time Corporal Naylor radioed for a back-up and pulled his vehicle in behind Parker's vehicle to prevent it from leaving. He unholstered his gun and ordered Parker to exit his vehicle and stand up against it. After determining that Parker did not have any weapons on him, Corporal Naylor handcuffed him and placed him under arrest. Parker was put in the back seat of Deputy Troester's police vehicle, which had just arrived. Corporal Naylor requested and received permission from Parker's grandmother to search her vehicle. He found four flashlights in the vehicle, two of which Mrs. LaFreniere could not identify.

Deputy Troester read Parker his rights, pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Parker indicated that he was unsure whether he wanted to talk to the officers. The deputy asked no further questions concerning possible criminal activity, but did ask for basic information necessary to book Parker. Subsequently, from either the police radio or from the officers' conversations outside the police vehicle, Parker learned that his grandmother had told the officers about a friend of his, David Green. Parker then told Deputy Troester that he had been with Green and that they had committed the burglaries, and offered to take him to Green's apartment. Green was picked up, and the officers proceeded to Mrs. Gamboa's subdivision with Parker and Green. En route, Parker told Deputy Troester that he had two dollars in his pocket and that it was half of the money that he and Green had gotten that evening. Additionally, he pointed out the three garages that they had burglarized that night, explaining in two instances how they had entered and what they had taken.

Upon their arrival at the Gamboa residence, Mrs. Gamboa positively identified Parker and Green as the individuals she had seen immediately following the burglary of her garage. Parker was taken to the Salt Lake County Jail and charged with three counts of burglary. Parker subsequently pleaded not guilty to the charges and moved to suppress all evidence seized following his arrest. The matter was tried to the court, and Parker was found guilty as charged.

The sole issue presented on appeal is whether the trial court erred in denying Parker's motion to suppress evidence of the three burglaries obtained subsequent to his arrest. Specifically, Parker argues

that the police did not have the requisite probable cause to arrest him, and that his subsequent statements were elicited in violation of his rights under *Miranda* and the Fifth Amendment. The State responds that the police had probable cause to arrest him on the traffic violation, and that the conversation overheard by Parker did not amount to interrogation, and thus, Parker's statements were not obtained in violation of his right to remain silent.

## ANALYSIS

"A trial court's findings of fact underlying its decision to grant or deny a motion to suppress must be upheld unless they are clearly erroneous. However, we review the trial court's legal conclusions in regards thereto under a correction of error standard." *State v. Hunter,* 831 P.2d 1033, 1035 (Utah App.1992) (citing *State v. Steward,* 806 P.2d 213, 215 (Utah App. 1991)).

■ We first address Parker's argument that the police lacked probable cause to arrest him after stopping him for the speeding violation. The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated[.]" U.S. Const. amend. IV. It is well settled that a police officer's stop of a vehicle is a "seizure" and therefore subject to fourth amendment protections. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *Sandy City v. Thorsness,* 778 P.2d 1011, 1012 (Utah App. 1989). However, the Fourth Amendment does not prohibit all seizures, but only *unreasonable* ones. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). Since a traffic stop is a limited seizure and is more like an investigative detention than a custodial arrest, *United States v. Walker,* 933 F.2d 812, 815 (10th Cir.1991) (citing *Berkemer v. McCarthy,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82

L.Ed.2d 317 (1984)), we assess the reasonableness of such a stop under principles governing investigative detentions, as set forth in *Terry. Id.* at 815 (citing *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988)). Under *Terry,* the determination of whether a seizure is reasonable involves a two-pronged test: (1) Was the officer's action justified at its inception?, and (2) Was his action reasonably related in scope to the circumstances which justified the interference in the first place? *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879; *accord State v. Robinson,* 797 P.2d 431, 435 (Utah App.1990).

■ As to whether Corporal Naylor's action was justified at its inception, we have previously stated that a stop "can be justified only upon a showing of reasonable suspicion that defendant had committed or was committing a crime or that he was stopped incident to a traffic offense." *Thorsness,* 778 P.2d at 1012 (citation omitted); *accord State v. Dorsey,* 731 P.2d 1085, 1087 (Utah 1986); *State v. Holmes,* 774 P.2d 506, 507–08 (Utah App.1989); *State v. Baird,* 763 P.2d 1214, 1216 (Utah App.1988). "Whether there are objective facts to justify such a stop depends on the 'totality of the circumstances.'" *Holmes,* 774 P.2d at 508 (quoting *State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987)). Corporal Naylor's undisputed testimony was that Parker was driving at a speed of at least forty-five miles per hour in a twenty-five mile per hour zone. It is readily apparent from these facts that it was proper for Corporal Naylor to stop Parker. Thus, the initial stop was clearly justified in this case.

However, we cannot say that Corporal Naylor's actions following the stop of Parker's vehicle were reasonably related in scope to the circumstances which justified the interference in the first place. Although Utah Code Ann. § 41–1–17 (1988) grants police officers discretion to arrest individuals who violate any provision of the Motor Vehicle Act,[1] we hold that, under the

---

1. Utah Code Ann. § 41–1–17 (1988) provides:
   The commission, and such officers and inspectors of the department as it shall designate, peace officers, state patrolmen, and others duly authorized by the department or by

circumstances of this case, the decision to arrest Parker was an abuse of that discretion.

In regard to the length and scope of traffic stops, the Supreme Court has held that the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Similarly, the Utah Supreme Court has stated that the length and scope of a detention for a traffic violation "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879); *accord State v. Lovegren*, 829 P.2d 155, 158 (Utah App.1992). Additionally, this court, as well as other courts, has consistently held that "once the reasons for the initial stop of the vehicle have been completed, the occupants must be allowed to proceed on their way." *Lovegren*, 829 P.2d at 158. "Any further temporary detention for investigative questioning after the fulfillment of the purpose for the initial traffic stop is justified under the fourth amendment only if the detaining officer has a reasonable suspicion of serious criminal activity." *Id.* (quoting *State v. Robinson*, 797 P.2d 431, 435 (Utah App.1990)); *accord Walker*, 933 F.2d at 816; *Guzman*, 864 F.2d at 1519. "Whether reasonable suspicion exists depends upon the 'totality of the circumstances.'" *Lovegren*, 829 P.2d at 158 (citations omitted).

■ Our analysis therefore centers on whether Corporal Naylor had a reasonable articulable suspicion of criminal activity be-

yond the traffic offense justifying further detention of Parker and his ultimate arrest. Such is clearly lacking here. At the time that Corporal Naylor stopped Parker, the only fact known to the officer that even remotely tied Parker to the burglaries was the presence of the vehicle he was driving in a ball field near where one of the crimes occurred. It is axiomatic that presence at or near the scene of a crime, without more, does not give rise to a reasonable suspicion of criminal activity. *See Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (per curiam); *Steward*, 806 P.2d at 216.

■ In fact, it is difficult to imagine any circumstances surrounding a routine traffic stop in which the actions taken by Corporal Naylor in this case would be justified.[2] After witnessing Parker speed into his grandmother's driveway, Corporal Naylor pulled his vehicle behind Parker's, unholstered his gun, removed Parker from his vehicle, handcuffed him, and placed him under arrest. There is no evidence that Parker was making any attempt at escape; to the contrary, the vehicle was in neutral and pointed toward the garage. At this point, Corporal Naylor had no reasonable articulable suspicion that Parker had committed or was about to commit a crime. Under the circumstances present here, it is patently offensive to suggest that a police officer acting as Corporal Naylor did here was within the realm of discretion granted to police officers under the law. Accordingly, we hold that Corporal Naylor's ac-

---

law shall have power and it shall be their duty:

....

(b) *To make arrests upon view and without warrant for any violation committed in their presence of any of the provisions of this act or other law regulating the operation of vehicles or the use of the highways.*
*Id.* (emphasis added). However, section 41–1–17 also provides that an officer may alternatively initiate the more usual traffic stop:

(c) When on duty, upon reasonable belief that any vehicle is being operated in violation of any provision of this act or of any other law regulating the operation of vehicles *to*

*require the driver thereof to stop, exhibit his driver's license and the registration card issued for the vehicles* and submit to an inspection of such vehicle, the registration plates and registration card thereon.
*Id.* (emphasis added).

2. We do not, however, express any opinion as to the appropriateness of arrest in those situations in which extenuating circumstances remove a traffic stop from the realm of a "routine" traffic stop, such as leading the police on a high speed chase or driving under the influence of alcohol or drugs.

tions were not reasonable in light of the facts in this case.[3]

## CONCLUSION

The trial court erred in denying Parker's motion to suppress evidence of the three burglaries obtained subsequent to the stop for the speeding violation. Accordingly, the denial of that motion and Parker's conviction are reversed, and this matter is remanded for further proceedings consistent with this opinion.

. BILLINGS and JACKSON, JJ., concur.

---

**3.** Since Parker's statements must be suppressed because they were made during the course of what we have already concluded to be an improper arrest, we do not address Parker's sec- ond claim that his subsequent statements were elicited in violation of his rights under *Miranda* and the Fifth Amendment.