**STATE of Utah, Plaintiff and Appellee,**

v.

**Jesus A. SEPULVEDA, Defendant and Appellant.**

**No. 920163–CA.**

Court of Appeals of Utah.

Nov. 19, 1992.

Milton T. Harmon, Nephi, for defendant and appellant.

R. Paul Van Dam and Marian Decker, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## AMENDED OPINION [1]

BILLINGS, Associate Presiding Judge:

Defendant Jesus A. Sepulveda appeals his jury conviction for possession of a controlled substance with intent to distribute, a second-degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1992). We affirm.

## FACTS

On January 30, 1990, Officer Paul V. Mangelson stopped a Camaro sports car near Nephi, Utah after observing the car had an expired registration sticker. Defendant, the driver, was traveling in the company of a woman and a juvenile. All were Hispanic. Officer Mangelson observed "[t]he interior was quite cluttered up, and it appeared that they'd been living in the car."

Officer Mangelson asked defendant for his driver's license and registration. Defendant produced an expired California temporary driving permit and had no registration information for the car. Defendant claimed a friend in California loaned him the vehicle for his return trip to Utah when the truck in which he traveled to California broke down.

As the conversation continued, Officer Mangelson observed defendant grow nervous and begin to shake. Officer Mangelson inquired whether defendant was carrying "contraband" in the car, and defendant responded negatively. Next, Officer Mangelson asked to search the vehicle for guns, alcohol, or drugs, and defendant said, "Go ahead." Officer Mangelson requested defendant and the two passengers to exit the car. During a pat-down search, Officer Mangelson discovered in the juvenile's back pocket a pipe commonly used for smoking marijuana.

Officer Mangelson asked defendant to open the trunk. Defendant stated he had no key to the trunk but broke the lock with a screwdriver so Officer Mangelson could search the trunk. After ascertaining the trunk contained no contraband, Officer Mangelson proceeded to the interior of the car. He observed that the screws on the back of the driver's bucket seat were marred. At some point before Officer Mangelson removed these screws, the woman passenger identified herself to Officer Mangelson as an undercover DEA agent. She told Officer Mangelson she was certain the car contained narcotics but did not know where they were hidden. Officer Mangelson removed the screws on the back of the front seat, revealing a compartment containing cocaine.

Defendant moved to suppress the cocaine on the ground that it was illegally seized. In support of his motion to suppress, defendant argued he never voluntarily consented to the search of the vehicle, and Officer Mangelson had no probable cause to search. The trial court denied defendant's motion. Defendant was convicted by a jury as charged. Despite his arguments below, on appeal defendant additionally claims the trial court erred in denying his motion to suppress because Officer Mangelson unreasonably detained him beyond the scope of the original traffic stop. Defendant also argues he gave no voluntary consent, and there was no probable cause to search the vehicle.

■ In examining a denial of a motion to suppress, we review the trial court's findings of fact "under a 'clearly erroneous' standard" and the trial court's "ultimate legal conclusions" based on those findings "under a 'correctness' standard." *State v. Lopez,* 831 P.2d 1040, 1043 (Utah App. 1992).

## STANDING

■ As a threshold issue, the State claims defendant lacks standing to challenge the search of the vehicle. The State argues the trial court actually found defendant had no standing.[2] In any event, we

---

1. This Amended Opinion replaces the Opinion in Case No. 920163–CA issued October 27, 1992.

2. In its decision denying defendant's motion to suppress, the trial court stated:

review the trial court's conclusion as to whether defendant had a legitimate expectation of privacy under a correctness standard, affording no deference. *See State v. Taylor*, 818 P.2d 561, 565 (Utah App.1991).

Fourth Amendment rights are personal in nature and "'may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)); *accord Taylor*, 818 P.2d at 565. Therefore, to challenge the propriety of a search, a defendant must establish "a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. at 143, 99 S.Ct. at 430; *accord State v. Atwood*, 831 P.2d 1056, 1058 (Utah App. 1992). Furthermore, "[o]nce the defendant has been put on notice that the state claims the warrantless search was constitutional because [the defendant] has no expectation of privacy in the area searched, then the defendant must factually demonstrate ... standing to contest the warrantless search." *State v. Marshall*, 791 P.2d 880, 887 (Utah App.), *cert. denied*, 800 P.2d 1105 (Utah 1990).

In determining whether a defendant has shown the requisite expectation of privacy in the area searched, we employ a two-step test. First, we examine whether the defendant "has demonstrated 'a subjective expectation of privacy in the object of the challenged search.'" *Taylor*, 818 P.2d at 565 (quoting *United States v. Hastamorir*, 881 F.2d 1551, 1560 (11th Cir.1989)); *accord State v. Webb*, 790 P.2d 65, 80 (Utah App.1990). Second, we conclude, as a matter of law, "whether society is 'willing to recognize the individual's expectation of privacy as legitimate.'" *Taylor*, 818 P.2d at 565 (quoting *Hastamorir*, 881 F.2d at 1560); *accord Webb*, 790 P.2d at 80. This test does not provide a "bright line" standard because "no single factor invariably

will be determinative" in judging the reasonableness of privacy expectations. *Rakas*, 439 U.S. at 152, 99 S.Ct. at 435 (Powell, J., concurring).

Utah courts have concluded a defendant must have at least permissive, possessory control of the car to contest a warrantless automobile search. *See State v. Constantino*, 732 P.2d 125, 126–27 (Utah 1987) (per curiam); *State v. Robinson*, 797 P.2d 431, 437 n. 6 (Utah App.1990); *State v. DeAlo*, 748 P.2d 194, 200 (Utah App.1987) (Greenwood, J., concurring and dissenting).

In *Constantino*, police officers stopped the car the defendant was driving because one of the officers knew the defendant's driver's license had been suspended and there was an outstanding warrant for the defendant's passenger. *See Constantino*, 732 P.2d at 125. The officers subsequently confirmed this information through dispatch. *See id.* When the defendant told the officers the registered owner of the car was "a Mr. Groberg," the officers impounded the car until they could find a licensed driver or contact the owner. *Id.* An inventory search of the car revealed two plastic bags of marijuana bearing the defendant's fingerprints. *See id.* at 125–26. The defendant moved to suppress the evidence, arguing lack of probable cause to stop and search the vehicle. *See id.* at 126.

The Utah Supreme Court declined to reach the defendant's arguments concerning the validity of the search, concluding:

> [T]he facts here show no right to possession. [The officer]'s brief investigation of defendant revealed that the car was registered to a person other than defendant. *Defendant presented no testimony that he had driven the car with the permission of the owner or that he had borrowed the car under circumstances that would imply permissive use. Absent claimed right to possession, he*

---

The two paramount[ ] considerations that this set of facts give[s] rise to are whether or not there was probable cause for the stop of the vehicle, and a subsequent search of it. *There is also an issue [as] to whether or not the defendant under the circumstances of this case had any standing to object to the officer searching the vehicle* aside from the probable

cause question, and lastly whether or not a consent was obtained to search the vehicle by the trooper from the defendant.

The Court concludes that the facts in this case support the right of the trooper to proceed with a search of the vehicle under *all of the above issues*.

(Emphasis added.)

*could not assert any expectation of privacy in the items seized and had no standing to object to the search.*

*Id.* at 126–27 (emphasis added); *accord State v. Larocco,* 742 P.2d 89, 92 (Utah App.1987) ("We agree with the reasoning in *State v. Constantino,* that there must be at least a claimed right to possession in the property."), *aff'd in part and rev'd in part,* 794 P.2d 460 (Utah 1990).

In *Robinson,* a police officer stopped a van in which the defendants Towers and Robinson were traveling for driving erratically. *See Robinson,* 797 P.2d at 433. Both defendants produced valid California driver's licenses and a registration listing "Paul Jarred" as the registered owner. *Id.* Defendant Robinson, riding in the passenger seat, told the officer Mr. Jarred was his employer and had permitted them to take the van on a two-week vacation. *See id.* A check with police dispatch revealed the van was not reported stolen. *See id.* After observing a homemade bed, two small gym bags, and a fishing pole in the back of the van, the officers decided to conduct a search, ultimately discovering marijuana hidden under the bed. *See id.* at 434. The trial court denied the defendants' motion to suppress the drug evidence. *See id.*

We stated:

The defendants' testimony that they were given permission by the owner to take the van on a two-week vacation trip was not disputed by the State. We hold that they established a possessory interest in the van sufficient to give them both a legitimate expectation of privacy in the entire van interior.

*Id.* at 437 n. 6.

In the instant case, Officer Mangelson was the only witness to testify at the hearing on defendant's motion to suppress. Officer Mangelson stated that when he inquired how defendant obtained possession of the car, defendant responded "the car belonged to a friend in California." According to Officer Mangelson, defendant said he and his passengers had been given permission from a friend to drive this car to Utah. Officer Mangelson initially noted the interior of the car was cluttered, as if defendant and his passengers had been living in the car.

Therefore, at the time of the search, the facts established (1) defendant was driving the car, (2) defendant had permission to use the car, and (3) defendant had personal belongings in the car.

Following the two-step standard outlined in *Taylor,* we first conclude defendant's statement that the car belonged to a friend in California who loaned it to defendant demonstrates a subjective expectation of privacy in the car. We must next conclude, as a matter of law, whether this statement manifests an expectation of privacy society is willing to recognize as legitimate. *See Taylor,* 818 P.2d at 565.

In the cases summarized above,[3] a driver who has permission to use a vehicle and has personal belongings in the car has a reasonable expectation of privacy in the car and its contents. In contrast to the defendant in *Constantino,* defendant in the present case told Officer Mangelson he was driving the car with the owner's permission. As in *Robinson,* defendant's statement that he borrowed the car he was driving with the owner's permission was sufficient to confer "a legitimate expectation of privacy in the entire [car] interior." *Robinson,* 797 P.2d at 437 n. 6.[4]

---

**3.** We also agree with Judge Greenwood's reasoning in *DeAlo,* 748 P.2d 194. Judge Greenwood found the defendant had standing to object to an automobile search because the defendant was driving the car, possessed keys to the car's ignition and trunk, had personal belongings inside the car and trunk, "had complete dominion and control over the area searched and could exclude all others," and the officer understood the defendant had permission to use the car. *Id.* at 200–01 (Greenwood, J., concurring and dissenting).

**4.** The present case is easily distinguished from cases in which the defendants lacked standing because the police officers knew, before conducting a search, that the vehicles were stolen. *See State v. Purcell,* 586 P.2d 441, 442 (Utah 1978); *State v. Montayne,* 18 Utah 2d 38, 414 P.2d 958, 959–60, *cert. denied,* 385 U.S. 939, 87 S.Ct. 305, 17 L.Ed.2d 218 (1966); *see also State v. Larocco,* 742 P.2d at 92 (court distinguishes between cases where search upheld because "it was clearly established and not disputed prior to the search that defendant did not own or did

Defendant's claim that he had permission to drive the Camaro was unrefuted, he had personal belongings within the car's interior, and Officer Mangelson had no information the car was stolen at the time of the search. Therefore, we are persuaded defendant demonstrated an expectation of privacy sufficient to permit him to challenge Officer Mangelson's warrantless search of the car.

## SCOPE OF DETENTION

■ Defendant, for the first time on appeal, claims Officer Mangelson unreasonably detained him after the initial traffic stop when Officer Mangelson requested to search the car. The State responds that we should not consider this issue as defendant raises it for the first time on appeal.

A police officer may legally stop a vehicle incident to a traffic offense. *See Lopez*, 831 P.2d at 1043; *State v. Lovegren*, 829 P.2d 155, 157–58 (Utah App.1992); *State v. Roth*, 827 P.2d 255, 257 (Utah App.1992). Defendant does not challenge his initial stop, based upon an expired registration sticker. However, the length and scope of a police officer's detention of a vehicle for a traffic violation must be " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *accord State v. Hansen*, 837 P.2d 987, 988 (Utah App.1992).

Utah courts have determined "[a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, conduct a computer check, and issue a citation." *Robinson*, 797 P.2d at 435; *accord Johnson*, 805 P.2d at 763. The officer may also check for outstanding warrants "so long as it does not significantly extend the period of detention." *State v.* *Figueroa–Solorio*, 830 P.2d 276, 280 (Utah App.1992). However, once the occupants of the vehicle have satisfied the reasons for the initial stop, the officer must permit them to proceed. *See Lovegren*, 829 P.2d at 158. "Any further temporary detention for investigative questioning after the fulfillment of the purpose for the initial traffic stop is justified under the fourth amendment only if the detaining officer has a reasonable suspicion of serious criminal activity." *Robinson*, 797 P.2d at 435; *accord Hansen*, 837 P.2d at 989.

The State correctly asserts that defendant failed to complain about the scope of his detention during the suppression proceedings below. Although counsel for defendant renewed defendant's motion to suppress twice during trial, for some unexplained reason counsel never questioned the legality of defendant's detention until this appeal. Defendant is represented by the same counsel on appeal. Even on appeal, counsel's treatment of the issue is cursory at best.[5]

A defendant is precluded from presenting an issue for the first time on appeal unless the defendant, on appeal, persuades us the trial court committed plain error or that there are other exceptional circum-

---

not have an interest in the property searched" and "those where defendant asserts ownership of the property or otherwise an interest giving rise to a 'legitimate expectation of privacy' ").

5. Despite raising the scope of Officer Mangelson's detention of defendant for the first time on appeal, counsel for defendant failed to set forth or urge us to apply a plain error analysis. Furthermore, counsel never even cited extensive controlling authority that the appropriate scope of an officer's detention during a traffic stop is limited to checking a driver's license and vehicle registration, conducting a computer check for outstanding warrants, and issuing a citation. *See, e.g., Johnson*, 805 P.2d at 763; *Hansen*, 837 P.2d at 988; *Lopez*, 831 P.2d at 1043; *Figueroa–*

*Solorio*, 830 P.2d at 280; *Lovegren*, 829 P.2d at 157–58; *Roth*, 827 P.2d at 257; *Robinson*, 797 P.2d at 435. Finally, counsel for defendant failed to perceive that, because he should have raised the scope of detention issue before the trial court, defendant on appeal had a potential claim of ineffective assistance of trial counsel. Rather, counsel improperly represented defendant again on appeal. *See Dunn v. Cook*, 791 P.2d 873, 878 (Utah 1990); *Fernandez v. Cook*, 783 P.2d 547, 550 (Utah 1989) (petitions for writ of habeas corpus were meritorious in view of fact that attorney who represents defendant at trial and on appeal cannot adequately challenge attorney's own competence in a claim of ineffective assistance of counsel).

stances.[6] Because defendant has not argued that either plain error or exceptional circumstances exist in this case, we decline to consider this scope of detention issue for the first time on appeal. However, for the benefit of courts and counsel, we note that case law concerning a defendant's scope of detention is quite clear and, in a subsequent case, given proper briefing on appeal, the facts of this case may well meet the stringent plain error standard.[7]

## CONSENT TO SEARCH

A search conducted without a warrant is a per se violation of the Fourth Amendment unless the State establishes the existence of at least one of " 'a few specifically established and well-delineated exceptions.' " *State v. Arroyo*, 796 P.2d 684, 687 (Utah 1990) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). One such exception is consent. *See State v. Vigil*, 815 P.2d 1296, 1301 (Utah App.1991); *State v. Carter*, 812 P.2d 460, 467 (Utah App.1991).

On appeal, defendant contends he did not voluntarily consent to Officer Mangelson's search of the vehicle. Specifically, defendant argues that because he does not speak English fluently and was intimidated by the officer, he did not voluntarily consent to the search. Defendant also argues his consent was tainted by the prior illegal detention.

To determine whether a defendant's consent to search was lawfully obtained, we apply a two-part test: " '(1) the consent must be voluntary in fact; and (2) the

consent must not be obtained by police exploitation of the prior illegality.' " *Carter*, 812 P.2d at 467 (quoting *Robinson*, 797 P.2d at 437); *accord Arroyo*, 796 P.2d at 688; *State v. Godina–Luna*, 826 P.2d 652, 655 (Utah App.1992).

Whether defendant's consent was voluntary in fact "is a fact sensitive issue to be determined by examining the totality of the circumstances," including "the specific characteristics of the accused and the details of the police conduct." *Carter*, 812 P.2d at 467; *accord Arroyo*, 796 P.2d at 689; *State v. Castner*, 825 P.2d 699, 704 (Utah App.1992). In addition, factors indicating a lack of coercion in obtaining a defendant's consent are the officer's lack "of a claim of authority to search," "the absence of an exhibition of force" by the officer, the officer's "mere request to search," "cooperation" by the defendant, and the officer's lack of "deception." *Carter*, 812 P.2d at 467–68 (quoting *State v. Whittenback*, 621 P.2d 103, 106 (Utah 1980)).

The second prong of the test applies only when "antecedent police illegality exists." *Carter*, 812 P.2d at 469. We need not consider this "attenuation" issue as we have previously declined to consider defendant's challenge to the scope of his detention for the first time on appeal. Our examination, therefore, focuses upon whether defendant's consent was "voluntary in fact."

In the present case, Officer Mangelson was the only witness at the hearing on defendant's motion to suppress. He stated

---

**6.** *See State v. Emmett*, 839 P.2d 781, 783–84 (Utah 1992); *State v. Archambeau*, 820 P.2d 920, 925, 926 (Utah App.1991); *State v. Scheel*, 823 P.2d 470, 473–74 (Utah App.1991); *LMV Leasing, Inc. v. Conlin*, 805 P.2d 189, 197–98 (Utah App.1991); *Robinson*, 797 P.2d at 435; *State v. Webb*, 790 P.2d 65, 78 (Utah App.1990).

**7.** *See, e.g., Lovegren*, 829 P.2d at 157–59 (after issuing citation, officer who searched car because of defendants' nervous behavior, the cluttered appearance of the car, and defendants' bloodshot eyes exceeded scope of traffic stop); *State v. Godina–Luna*, 826 P.2d 652, 653–55 (Utah App.1992) (after confirming driver was not intoxicated, officer's further detention and questioning, supposedly because driver ap-

peared nervous and was traveling "in a less than direct route," exceeded scope of traffic stop); *State v. Castner*, 825 P.2d 699, 703 (Utah App. 1992) (after defendant produced proper documentation and officer observed vehicle identification numbers on car registration and dashboard were consistent, officer's request to view vehicle number on car doorpost exceeded scope of traffic stop); *Robinson*, 797 P.2d at 436–37 (after issuing citation, officer who detained defendants and searched van due to defendants' nervousness, failure to make eye contact with officer, improper clothing and equipment for the weather, and failure to produce written permission from van's owner exceeded scope of traffic stop).

that defendant "spoke mostly English" and "spoke fairly good English." If defendant could not understand, the woman passenger would interpret for him, "which was very seldom." Officer Mangelson testified that when he asked defendant for permission to search the car for guns, alcohol, or drugs, defendant replied, "Go ahead." Furthermore, although defendant apparently had no key to the trunk, when Officer Mangelson asked defendant to open the trunk, defendant "actually broke the lock on the trunk to open it." According to the officer, defendant "was that intent on showing me that there was nothing there."

In its written decision denying defendant's motion to suppress, the trial court found that "uncontr[o]verted testimony shows that consent was given for the vehicle search and no evidence would support a showing of the consent being coerced or in any manner otherwise unlawfully obtained."

Based on the record, we are not persuaded the trial court erred in determining defendant voluntarily consented to a search of the vehicle.

## CONCLUSION

In sum, we initially find defendant has standing to challenge Officer Mangelson's warrantless search of the car. We conclude Officer Mangelson lawfully stopped defendant incident to a traffic violation and conducted a search of the vehicle defendant was driving pursuant to defendant's voluntary consent. We do not reach defendant's challenge to the legality of the scope of his detention as he raises this issue for the first time on appeal. Therefore, we affirm the trial court's denial of defendant's motion to suppress.

GREENWOOD and ORME, JJ., concur.