STATE of Utah, Plaintiff and Appellee,

v.

Matthew W. KOLSTER, Defendant and Appellant.

No. 930373–CA.

Court of Appeals of Utah.

Feb. 15, 1994.

Stephen R. McCaughey, G. Fred Metos (argued), McCaughey and Metos, Salt Lake City, for defendant and appellant.

Jan Graham, State Atty. Gen., Todd A. Utzinger (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Matthew W. Kolster appeals his conviction for possession of a controlled substance within one thousand feet of a church, a third degree felony, in violation of Utah Code Ann. § 58-37-8(5)(a)(ix) (Supp.1993). Kolster specifically appeals the trial court's denial of his motion to suppress evidence. We affirm.

## FACTS

On December 20, 1991, an anonymous caller informed Cache County narcotics agents that Kolster expected a Federal Express package from El Paso, Texas containing marijuana. The caller also told police that the package was addressed not to Kolster's home but to his friend's residence. The caller further indicated that the names of both sender and receiver were false.

On December 21, 1991, detectives examined packages going to Logan, Utah at the Federal Express sorting building in Ogden, Utah. Detectives found a small package from El Paso, Texas addressed to Juan Contreras of 45 Fonnesbeck Ave., Logan, Utah. Detectives verified that the sender's address and phone number were false with El Paso, Texas police. Detectives also confirmed that Ruben and Graylene Contreras, not Juan Contreras, resided at 45 Fonnesbeck. The recipient's phone number was also false but very similar to Kolster's home phone number. Detectives obtained a search warrant for the package and found three cellophane "potatoes" containing marijuana.

Two days later on December 23, 1991, detectives secured a second search warrant for the residence at 45 Fonnesbeck Ave., Logan, Utah. A detective telephoned the Contreras residence, identified himself as a representative of Federal Express, and apologized for the delay in delivering the package. Ruben Contreras asked for the package to be delivered as soon as possible and then added, "We really need it." A second detective dressed as a Federal Express representative delivered the package. Ruben Contreras signed for the package as Juan Contreras. Detectives waited for approximately five minutes and then executed the second search warrant. They arrested Kolster along with two other males inside the Contreras residence.

Kolster moved to suppress evidence seized in the search of the package, asserting a violation of his Fourth Amendment rights because neither warrant was supported by probable cause. The State responded that Kolster lacked standing to challenge the constitutionality of the searches. The trial court denied Kolster's motion to suppress, declining to address the merits of the motion. The trial court concluded that defendant had no expectation of privacy in the package and therefore lacked standing to challenge the searches. On appeal, Kolster challenges only the trial court's conclusion that he failed to establish a legitimate expectation of privacy in the package during its initial search.

## ISSUES

This case presents two issues: (1) whether Kolster had a legitimate expectation of privacy in a package neither in his possession nor addressed to him; and (2) whether Kolster should have "automatic standing" under article I section 14 of the Utah Constitution to challenge the search(es) that resulted in his arrest.

## STANDARD OF REVIEW

■ The issues presented here surround the trial court's determination that Kolster had no expectation of privacy in the searched package. We review that legal conclusion under a correction of error standard, affording no deference to the trial court. *State v. Sepulveda,* 842 P.2d 913, 915 (Utah App. 1992).

## ANALYSIS

### Legitimate Expectation of Privacy

■ Fourth Amendment rights are personal and " 'may not be vicariously asserted.' " *Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (quoting *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)); *accord State v. Sepulveda,* 842 P.2d 913, 915 (Utah App.1992). Accordingly, to challenge the constitutionality of a search, defendants must demonstrate "a legitimate expectation of privacy in the invaded place." *Rakas,* 439 U.S. at 143, 99 S.Ct. at 430; *accord State v. Scott,* 860 P.2d 1005, 1007 (Utah App.1993). The two-part "legitimate expectation of privacy" test is well established. First, defendants must demonstrate that they had a subjective expectation of privacy in the object searched. Second, defendants must demonstrate that their expectation was one that society views as reasonable. *Scott,* 860 P.2d at 1007; *Sepulveda,* 842 P.2d at 915; *State v. Taylor,* 818 P.2d 561, 565 (Utah App.1991). Kolster fails both parts of this test.

■ First, Kolster has not demonstrated a subjective expectation of privacy in the searched package. Kolster never asserted a property or possessory interest in the package as required to show privacy expectations under *Rakas,* 439 U.S. at 148, 99 S.Ct. at 433. Kolster simply argues that because narcotics officers learned from an anonymous source that he was the intended recipient, he somehow achieved a subjective expectation of privacy in the package. We disagree. "[A]n officer's belief is irrelevant to the question of a defendant's expectation of privacy." *State v. DeAlo,* 748 P.2d 194, 197 (Utah App.1987). What an officer knew or believed is part of our legitimate expectation of privacy analysis

only when a defendant has asserted to that officer a permissive or possessory interest in the object searched. *See Sepulveda,* 842 P.2d at 916; *State v. Robinson,* 797 P.2d 431, 437 n. 6 (Utah App.1990).

■ We determine whether defendants have an expectation of privacy from their point of view. As Professor LeFave notes, "standing depends upon [the defendant's] justified expectation of privacy." 4 Wayne R. LeFave, *Search and Seizure,* § 11.3(e), at 329 (2d ed. 1987). In other words, we look to how defendants manifest their expectations regarding the object searched to determine their subjective privacy interest. Kolster made no inquiries about or attempts to retrieve the package despite a two-day delay from an overnight delivery service. Although Kolster was in the Contreras residence when the undercover detective delivered the package, Ruben Contreras, not Kolster, signed for it. Kolster demonstrated no expectation that the package was intended for or belonged to him. Moreover, Kolster did not assert that the package belonged to him during the search at the Contreras residence or in his motion to suppress.

Kolster relies on *Walter v. United States* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) where an intended recipient using a false name nonetheless had standing to contest the search of packages containing obscene films. Kolster's case, however, is not analogous. In *Walter,* the defendant gave delivery instructions that the packages would be picked up at the carrier's terminal. *Id.,* 447 U.S. at 651 n. 1, 100 S.Ct. at 2399 n. 1. The defendant also made numerous attempts to locate the packages. *Id.,* 447 U.S. at 652 n. 3, 658 n. _1, 100 S.Ct. at 2399 n. 3, 2402 n. 11. Furthermore, the defendant ultimately moved for return of the films. *Id.,* 447 U.S. at 652, 100 S.Ct. at 2399. The defendant in *Walter,* unlike Kolster, repeatedly asserted a possessory interest in the packages and thus demonstrated his subjective expectation of privacy. Because Kolster never asserted any interest in the package prior to his arrest, his reliance on *Walter* is misplaced. Kolster has failed to demonstrate a subjective expectation of privacy in the package during its initial search.

■ Second, whatever expectations of privacy Kolster had in the package, they are not those that society views as reasonable. It is not reasonable for a defendant subjectively to expect privacy in a package bearing a different name and a different address from his own. Had Kolster attempted to locate or retrieve the package during the two-day delay, he would have been hard pressed to convince Federal Express that, because the recipient's phone number was similar to his, the package belonged to him. Society does not recognize subjective privacy interests in the mail of others.

Additionally, Kolster's argument offers no boundary. How far removed from the search of a package can a defendant be and still assert a privacy interest? In *United States v. Givens,* 733 F.2d 339, 342 (4th Cir. 1984) (per curiam), the court found defendants lacked any privacy interest in a package addressed to a third party even though the drugs inside were intended for them. The court observed the need for limits to assertions of privacy interests and suggested that without such limits "privacy claims might be advanced all along a chain of drug distribution, like ripples in a pond, becoming more and more remote from the point at which drugs are intercepted." *Id.* In the present case, the package similarly was addressed to a third party. Although the first name was fictitious, the address was the actual residence of Ruben and Graylene Contreras. Whereas the Contrerases may have had a reasonable expectation of privacy in the package, Kolster did not.

In sum, Kolster did not demonstrate a legitimate expectation of privacy in the package addressed to Juan Contreras at 45 Fonnesbeck Ave., Logan, Utah. He asserted no possessory or property interest in the package and thus did not demonstrate a subjective expectation of privacy. Kolster, moreover, did not demonstrate any expectation of privacy that society views as reasonable.

### "Automatic Standing"

Having failed to demonstrate a legitimate expectation of privacy in the searched package, Kolster asks us to employ a different standard for standing under article I, section 14 of the Utah Constitution. Kolster points to several states that have adopted an automatic standing rule for defendants charged with possessory offenses. *See, e.g., State v. Owen,* 453 So.2d 1202, 1205 (La.1984); *Commonwealth v. Amendola,* 406 Mass. 592, 550 N.E.2d 121, 125 (1990); *State v. Settle,* 122 N.H. 214, 447 A.2d 1284, 1286–87 (1982); *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457, 459–63 (1983); *State v. Simpson,* 95 Wash.2d 170, 622 P.2d 1199, 1203–06 (1980). Under their state constitutions, these state courts follow the rule that possession grants standing as articulated in *Jones v. United States,* 362 U.S. 257, 263, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960), *overruled by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In other words, some states follow the *Jones* automatic standing rule even though the United States Supreme Court has expressly overruled it. *Salvucci,* 448 U.S. at 95, 100 S.Ct. at 2554.

Kolster does not recognize, however, that the *Jones* rule would not alter the outcome of this case. "[T]he automatic standing rule of *Jones* was applicable only where the offense charged 'possession of the seized evidence *at the time of the contested search and seizure.'*" *Salvucci,* 448 U.S. at 87 n. 3, 100 S.Ct. at 2550 n. 3 (quoting *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973) (emphasis added). Accordingly, because Kolster was not in possession of the package at the time of its initial search, he would lack standing to challenge the constitutionality of that search even under *Jones.* We, therefore, do not consider Kolster's claim under the Utah Constitution because while he perhaps has articulated "how article I, section 14 should be read more broadly," he has wholly failed to show "how such a broader reading would result in suppression [of the evidence] in this case." *State v. Brooks,* 849 P.2d 640, 645 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993).

### CONCLUSION

Because Kolster had no legitimate expectation of privacy in the package addressed to Juan Contreras, 45 Fonnesbeck Ave., Logan, Utah, he had no standing to challenge the constitutionality of its search. The trial

court properly denied his motion to suppress the discovered evidence. Accordingly, Kolster's conviction is affirmed.

ORME, J., concurs.

BENCH, J., concurs in result only.